# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
May 23, 2017

Plaintiff-Appellee,

v

No. 330635
Wayne Circuit Court
LC No. 15-005815-01-FH

JAMAL BASIM EL-AMIN, also known as
JAMEL BASIM ELAMIN,

Defendant-Appellant.

Before: M. J. KELLY, P.J., and BECKERING and SHAPIRO, JJ.

PER CURIAM.

Defendant, Jamal Basim El-Amin, appeals as of right his jury trial convictions and sentences for possession with intent to deliver less than 50 grams of heroin, MCL 333.7401(2)(a)(*iv*), second violation, MCL 333.7413(1)(a), possession with intent to deliver less than 50 grams of cocaine, MCL 333.7401(2)(a)(*iv*), carrying a concealed weapon (CCW), MCL 750.227, felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Upon learning of an error at the first sentencing hearing, the trial court resentenced defendant, as a fourth habitual offender, MCL 769.12, to 3 to 20 years' imprisonment for the possession with intent to deliver heroin conviction, 3 to 20 years' imprisonment for the possession with intent to deliver cocaine conviction, two to five years' imprisonment for the CCW conviction, two to five years' imprisonment for the felon in possession of a firearm conviction, and two years' imprisonment for the felony-firearm conviction. We affirm.

## I. PERTINENT FACTS

At defendant's trial, Detroit police officer Allen Ibrahimovic testified that, on the day of defendant's arrest, he and his partner, Detroit police officer Dietrich Spidell, were traveling on Interval Street toward the intersection of Lauder Street in Detroit. Both officers testified that Spidell was driving and Ibrahimovic was riding the passenger's seat. Ibrahimovic testified that when the officers reached the intersection, he observed defendant on Lauder approximately 36 feet from the intersection. The officer further testified that he watched defendant get out of his car parked on Lauder, look up toward the marked police car, raise his right elbow 90 degrees, grab his right waist, and walk quickly toward an abandoned house nearby. Ibrahimovic testified that he and Spidell turned down Lauder and pursued defendant. After Spidell stopped the car in

-1-

the middle of the street, Ibrahimovic got out and pursued defendant. Ibrahimovic said that he saw defendant drop a plastic bag onto the grass between the driveway and the abandoned house. Ibrahimovic estimated that he was approximately 10 feet behind defendant by the time defendant reached the side entrance of the abandoned house. Because the house did not have a door, Ibrahimovic said he saw defendant enter the house, pull out a firearm, and throw it down a staircase located just inside the side entrance of the abandoned house. Ibrahimovic testified that he did not go into the house at that time. Instead, he called for backup and ordered defendant out. The officer said that defendant complied with his command and walked out with his hands up. The plastic bag contained heroin and cocaine, and Ibrahimovic recovered a rusted revolver from the bottom of the staircase.

Testifying on behalf of defendant were Lashonna Veal and Rodney Moore, who lived next door and across the street from the vacant house, respectively. Veal testified that she observed defendant talking on his cellphone and relieving himself near the doorway of the vacant house. Two police officers arrived and one of the officers began shouting, "Show me your hands," at a man in a green shirt walking down the driveway of the house on the far side of the vacant house. She said that defendant was walking down the driveway of the vacant house at the same time, but they could not see him because of the bushes. Then, the officer yelled at defendant to show them his hands, grabbed defendant, handcuffed him, and took him to the police car, where the other officer searched him. When backup arrived, one of the original police officers went into the vacant house with three additional officers and, after a few minutes, the officers came out of the house with a gun, several bags, and a box of bullets. Testifying similarly, Moore said he was mowing his grass when he saw defendant go toward the bushes on the side of the vacant house to relieve himself. The police arrived, ordered defendant to show his hands, searched him, and put him in the back seat of their car. Then, other police officers arrived, went into the vacant house, and came back out with a black gun and what Moore assumed were drugs.

Finally, defendant also testified that he was relieving himself in the bushes by the side door of the vacant house when an officer pointing a gun at him told him to "freeze." He said that the officer grabbed him and took him to the police car, where officers searched him, handcuffed him, and placed him in the car. Defendant said that these officers and others that arrived on the scene went into the vacant house and came back out about 10 minutes later carrying "items." Neither Veal, Moore, nor defendant testified that officers founds drugs or a gun when they searched defendant.

II. ANALYSIS

A. FOURTH AMENDMENT VIOLATION

Defendant first argues that the police officers seized him in violation of the Fourth Amendment's prohibition against unreasonable searches and seizures and, consequently, that the narcotics and handgun should have been suppressed as fruit of the unlawful seizure. We disagree. Defendant did not preserve this issue for appellate review by filing a motion to suppress the narcotics and firearm evidence. See *People v Gentner, Inc*, 262 Mich App 363, 368-369; 686 NW2d 752 (2004). Therefore, the issue is unpreserved, and our review is for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999).

"Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of defendant's innocence." *Id*. at 763-764.

The United States and Michigan Constitutions prohibit unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11. "The Michigan constitutional provision is generally construed to afford the same protections as the Fourth Amendment." *People v Antwine*, 293 Mich App 192, 194-195; 809 NW2d 439 (2011). Thus, "[i]n order for any police procedure to have constitutional search and seizure implications, a search or seizure must have taken place." *People v Frohriep*, 247 Mich App 692, 699; 637 NW2d 562 (2001). "The safeguards of the Constitution, with respect to police/citizen contact, will vest only after the citizen has been seized." *Id*. (quotation marks and citation omitted). The United States Supreme Court in *California v Hodari D.*, 499 US 621, 626; 111 S Ct 1547, 1551; 113 L Ed 2d 690 (1991), made clear that the actual pursuit of a person does not amount to a seizure; rather, to constitute a seizure for Fourth Amendment purposes, there must be either the application of physical force or the submission by the suspect to an officer's show of authority. See also *People v Lewis*, 199 Mich App 556, 559-560; 502 NW2d 363 (1993). In *Lewis*, this Court held that a fleeing defendant was not seized until an officer "actually laid his hand on him" and then determined that even if the officer's pursuit of the defendant "amounted to a show of authority," because the defendant did not submit to that show of authority, a seizure did not occur until the officer physically took hold of the defendant. *Id*.

In the instant case, when Spidell and Ibrahimovic began their pursuit of defendant by turning down Lauder, there may have been a show of authority at that point in time. However, as Ibrahimovic continued to pursue defendant on foot, defendant dropped the plastic bag in the lawn, entered the abandoned house, and threw his handgun down the basement steps. At that point, Ibrahimovic had not physically restrained defendant and defendant had not yet submitted to the officer's authority. Thus, defendant was not seized at the time he is said to have discarded the bag of narcotics on the lawn or thrown the handgun down the basement stairs of the abandoned house. Instead, defendant finally submitted to Ibrahimovic when defendant voluntarily gave himself up and exited the abandoned house with his hands up. Therefore, the Fourth Amendment could not have been implicated before defendant's arrest, and defendant effectively abandoned the plastic bag and handgun. *Frohriep*, 247 Mich App at 699; *Lewis*, 199 Mich App at 560. For that reason, the narcotics and handgun cannot be suppressed as evidence from an unlawful seizure. *Lewis*, 199 Mich App at 560 ("Inasmuch as the plastic bag was abandoned while [the] defendant attempted to evade the officers' pursuit and before he was actually seized, the contents of the plastic bag may not be suppressed as the fruit of an illegal detention of [the] defendant.") (citing *California v Hodari D*, 499 US 621; 111 S Ct 1547; L Ed 2d 690 (1991)).

Defendant claims that he was denied the effective assistance of counsel because his attorney did not move to suppress the narcotics or the firearm. This argument is unavailing. As previously explained, defendant has not established any error regarding seizure of the narcotics and handgun evidence. By no one's account were the drugs or the gun found on defendant's person. According to the police, defendant abandoned the drugs and gun prior to his seizure, and according to defense witnesses, police found them in the vacant house after they seized defendant, who they never saw enter the house. Thus, by neither account did police obtain the drugs and gun as a result of their seizure of defendant. Accordingly, any motion to suppress on

the basis that police seized the evidence in violation of defendant's Fourth Amendment rights would have been futile. Defense counsel is not ineffective for failing to make a futile motion. *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004).

## B. ADMISSIBILITY OF EVIDENCE

Next, defendant argues that he was deprived of his due-process rights when the trial court allowed Ibrahimovic to testify as to the firearm's defaced serial number and to the fact that firearms with a defaced serial number are usually connected to other crimes. This Court reviews the trial court's decision whether to admit evidence for an abuse of discretion. *People v Duncan*, 494 Mich 713, 722; 835 NW2d 399 (2013). A trial court abuses its discretion if it selects an outcome outside the range of reasoned and principled outcomes. *Id*. at 722-723. If the admission of evidence involves a preliminary question of law, this Court reviews the issue de novo. *Id*. at 723.

"Generally, all relevant evidence is admissible at trial, and [e]vidence [that] is not relevant is not admissible." *People v Bergman*, 312 Mich App 471, 483; 879 NW2d 278 (2015), citing MRE 402 (citation and quotation marks omitted). "Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Bergman*, 312 Mich App at 483, citing MRE 401 (quotation marks omitted). "Under this broad definition, evidence that is useful in shedding light on *any* material point is admissible." *People v Henry*, 315 Mich App 130, 141; 889 NW2d 1 (2016). However, even relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403.

During direct examination of Ibrahimovic, the prosecution asked the officer if he had placed the revolver he recovered from the vacant house "on evidence,"[1] to which the officer replied that the gun's serial number was scratched off. The prosecutor next asked why someone would scratch off a gun's serial number and, over defense counsel's unsuccessful objection as to relevance, the officer explained, "Most of the time people, when they try to get that serial number off, the gun was stolen. He was using it. It was used in a crime, or it is about to be used in a crime. So it can't be traced back." The prosecution obtained the witness's clarification that he was referring to his experience with guns where the serial number had been defaced, not what defendant's motivations were. Defendant contends that this testimony was not relevant to any material issue, that it was offered for the improper purpose of establishing defendant's propensity to commit crimes, and that any possible relevance of the testimony was substantially outweighed by the risk to defendant of unfair prejudice. The prosecution contends that it "may well be" relevant to the question of why a person would dispossess himself and claim no knowledge of such a gun upon being approached by a police officer.

---

[1] In context, and in light of subsequent questioning, it is clear that the prosecution was undertaking to establish chain-of-custody with respect to the gun at issue in the case.

Even assuming for the sake of argument that the testimony was inadmissible as being irrelevant or unduly prejudicial, the question becomes whether the trial court's error was harmless such that reversal is not warranted. See MCL 769.26. The erroneous admission of evidence is a nonconstitutional issue. *People v Whittaker*, 465 Mich 422, 426; 635 NW2d 687 (2001). Defendant preserved appellate review by timely objecting to relevance in the trial court, *People v Pipes*, 475 Mich 267, 277; 715 NW2d 290 (2006), although he did not object on the basis that the testimony was unduly prejudicial under MRE 403. MCL 769.26 "presumes that a preserved, nonconstitutional error is not a ground for reversal unless 'after examination of the entire cause, it shall affirmatively appear' that it is more probable than not that the error was outcome determinative." *People v Lukity*, 460 Mich 484, 496; 596 NW2d 607 (1999), quoting MCL 769.26. The statute places the burden of demonstrating otherwise on the defendant. *Id*. at 495.

After examining the record in the case at bar, we conclude that defendant has not met his burden. Ibrahimovic testified that, as defendant fled, he dropped what turned out to be a bag of narcotics on the driveway and tossed a gun down the basement steps of an abandoned house. At the detention center, $281.00 and a "tally sheet" were taken from defendant. The tally sheet consisted of an index card with names and amounts. Defense witnesses offered contradictory testimony about whether defendant dispossessed himself of the drugs and gun, but "witness credibility is a question for the fact-finder, and this Court does not interfere with the fact-finder's role." *People v Solloway*, 316 Mich App 174, 263; 891 NW2d 255 (2016).[2] Evidence of the defaced serial number was never referred to again after Ibrahimovic testified. No other witnesses discussed the defaced serial number, and it was not brought up during the prosecution's closing argument. In light of the adverse testimony presented at trial, deferring to the jury's role as factfinder, and given the single mention of the gun's defaced serial number, defendant has not shown that the outcome would have been different without Ibrahimovic's testimony about why someone would deface a gun's serial number.

## C. PROSECUTORIAL MISCONDUCT AND JUDICIAL BIAS

Defendant also argues that the prosecutor engaged in prosecutorial misconduct when she objected to defense counsel's closing argument, claiming defense counsel had mischaracterized the testimony. We disagree. This issue is unpreserved, as defendant raised no objection below. *Thomas*, 260 Mich App at 453-454 (noting that defendant must make a contemporaneous objection to preserve the issue of prosecutorial misconduct). Accordingly, our review is for plain error affecting defendant's substantial rights. *Id*. Once the plain error rule is satisfied, a conviction is reversed only if defendant is actually innocent or if the error "seriously affected the fairness, integrity, or public reputation of judicial proceedings." *People v Ackerman*, 257 Mich App 434, 449; 669 NW2d 818 (2003).

"For allegations of prosecutorial misconduct, [this Court] examine[s] the pertinent portion of the record below and evaluate[s] the prosecutor's conduct to determine whether it

---

[2] Further, if the jury chose to believe defendant's witnesses as to the gun not being associated with defendant, it would not matter whether the serial number on the gun was defaced.

denied the defendant a fair trial." *People v Kennebrew*, 220 Mich App 601, 607; 560 NW2d 354 (1996). "[T]he test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). "[A] prosecutor's comments must be read as a whole and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial." *People v Callon*, 256 Mich App 312, 330; 662 NW2d 501 (2003). With that said, "the prosecutor may not suggest that defense counsel is intentionally attempting to mislead the jury." *People v Fyda*, 288 Mich App 446, 461; 793 NW2d 712 (2010). Such arguments impose on the defendant's presumption of innocence and "impermissibly shift[] the focus from the evidence itself to the defense counsel's personality." *Id*. (quotation marks and citation omitted).

During closing argument, in an attempt to stress inconsistencies in the police officers' testimony, defense counsel argued that Ibrahimovic said "two things": "One, we were stopped at the intersection, that's when I saw [defendant]. Two, we were still approaching, that's when I saw [defendant]." The prosecution objected, contending that defense counsel's statement was "a mischaracterization of the facts." The trial court said it did not recall that being the officer's testimony, but defense counsel's comments were argument and the court would allow it. Defense counsel next recounted Spidell's testimony that the officers were heading eastbound when they made a U-turn and referred to it as a "third story." This drew another objection from the prosecution, who insisted, "It's not a third story."

Defendant argues that the prosecutor's objection was meant to prove that defense counsel was intentionally trying to mislead the jury. This argument is unavailing. The prosecutor raised a common objection, arguing that defense counsel's characterization did not comport with the officers' actual testimony. The prosecutor never argued while making the objection or later during rebuttal that defense counsel was intentionally attempting to mislead the jury in any way. Further, viewing defense counsel's comments in relationship to the evidence, the prosecution's objection that the comments did not comport with the officers' testimony was not necessarily improper. Contrary to what defense counsel argued at trial, Ibrahimovic did not give two separate stories. After reviewing his police report, Ibrahimovic corrected his earlier testimony and stated that the police car was still approaching the intersection of Interval and Lauder, rather than already stopped at the intersection. Additionally, Spidell explained that he made a U-turn, headed westbound on Interval, and then turned left onto Lauder. While Ibrahimovic did not mention a U-turn, he also said that the officers were headed westbound on Interval before turning left onto Lauder. Thus, rather than being a "third story," Spidell's testimony arguably dovetailed with that of Ibrahimovic. Viewing the prosecution's comments as a whole and evaluating them "in light of defense counsel's arguments and the relationship they bear to the evidence admitted at trial" *Callon*, 256 Mich App at 330, we conclude that that the prosecutor's comments did not deny defendant a fair trial, *Dobek*, 274 Mich App at 63.

In sustaining the prosecution's objection to defense counsel's characterization of Spidell's testimony as a "third story," the trial court stated, "Move on. I just disagree with you, [defense counsel], on that." Defendant argues that this comment by the trial court exhibited bias. This argument also fails.

A defendant must overcome "a heavy presumption of judicial impartiality" when claiming judicial bias. *People v Jackson*, 292 Mich App 583, 598; 808 NW2d 541 (2011)

(quotation marks and citation omitted). In determining whether a trial judge's conduct deprives defendant of a fair trial, this Court considers whether the "trial judge's conduct pierces the veil of judicial impartiality." *People v Stevens*, 498 Mich 162, 170; 869 NW2d 233 (2015). "A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *Id*. at 171. "Judicial rulings, as well as a judge's opinions formed during the trial process, are not themselves valid grounds for alleging bias unless there is deep-seated favoritism or antagonism such that the exercise of fair judgment is impossible." *Jackson*, 292 Mich App at 598 (quotation marks and citation omitted). Likewise, "[c]omments that are critical of or hostile to counsel and the parties are generally not sufficient to pierce the veil of impartiality." *Id*.

We see nothing in the court's statement at issue to indicate deep-seated favoritism or antagonism, or even criticism or hostility. Viewed in its context, the court's comment was a respectful explanation of why it allowed defense counsel to argue that Ibrahimovic testified to "two things" but sustained the prosecution's objection to the characterization of Spidell's testimony as a "third story." Further, because jurors are presumed to follow their instructions, *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998), the trial court's general curative instruction stating, among other things, that the court's comments or instructions were not meant to influence the jury's vote or express a personal opinion about the case, and that if the jury believed the court had a personal opinion, it was to pay no attention to it and decide the case from the evidence, cuts against a finding of judicial bias. *Stevens*, 498 Mich at 190. Considering the totality of the circumstances, we conclude that it is not reasonably likely that the trial judge's statement improperly influenced the jury, and that the judge's conduct did not pierce the veil of judicial impartiality. *Stevens*, 498 Mich at 170, 171.

## D. SENTENCING ERROR

Finally, defendant argues that the trial court erred when it increased the minimum sentences on defendant's drug possession and firearm convictions during resentencing. We disagree. Defendant having raised no objection to the resentencing procedure in the trial court, our review is for plain error affecting defendant's substantial rights. *People v McLaughlin*, 258 Mich App 635, 670; 672 NW2d 860 (2003); MCR 6.429(C).

The trial court initially sentenced defendant on November 13, 2015 to five years' imprisonment for felony-firearm, second offense, along with 1 to 20 years' imprisonment for both drug counts and 1 to 10 years' imprisonment for the CCW and felon in possession counts. The prosecution discovered that this was an error because defendant did not have a prior felony-firearm conviction. Defendant points out that there was no motion for resentencing in the lower court file, but "the prosecution apparently asked for resentencing." The parties returned to court on November 16, 2015, and the prosecutor asked for sentences of 3 to 20 years' imprisonment on the drug counts and two to five years' imprisonment on the CCW and felon in possession counts. Defense counsel argued that the original sentences should remain the same except for the sentence of five years for felony-firearm. The trial court amended defendant's sentence for felony-firearm to two years' imprisonment, but it also changed the other sentences in line with the prosecutor's request.

"Although the authority of the court over a defendant typically ends when a valid sentence is pronounced, the court may correct an invalid sentence after sentencing." *People v Miles*, 454 Mich 90, 96; 559 NW2d 299 (1997) (citations omitted). This rule derives from MCR 6.429(A):

> (A) **Authority to Modify Sentence.** A motion to correct an invalid sentence may be filed by either party. The court may correct an invalid sentence, but the court may not modify a valid sentence after it has been imposed except as provided by law.

Defendant argues that the trial court erred because it only had authority to modify the incorrect felony-firearm sentence. Defendant relies on our Supreme Court's instruction that "[w]here a court imposes a sentence that is partially invalid, the Legislature has provided that the sentence is not to be 'wholly reversed and annulled,' rather [it] is to be set aside only 'in respect to the unlawful excess.' " *People v Thomas*, 447 Mich 390, 393; 523 NW2d 215 (1994), citing MCL 769.24. Furthermore, the *Thomas* Court stated that "[t]he rule that a sentencing court may not later modify a valid sentence has been restated by this Court in MCR 6.429(A) . . . ." *Thomas*, 447 Mich at 393. Defendant's argument is without merit.

Defendant's reliance on *Thomas* is misplaced. In *Thomas*, our Supreme Court addressed how properly to correct a violation of the rule set forth in *People v Tanner*, 387 Mich 683; 199 NW2d 202 (1972), that a minimum sentence may not exceed two-thirds of the maximum sentence. *Thomas*, 447 Mich at 392. When the defendant moved in the trial court to set aside his prison sentence of 60 to 75 years because it violated the *Tanner* rule, the trial court corrected the error by raising the maximum sentence to 90 years, a solution that this Court affirmed. *Id*. at 391-392. However, the Supreme Court reasoned that the proper way to correct a partially invalid sentence was not to modify the valid portion of the sentence, e.g., the 75-year maximum, but to modify the "unlawful excess," e.g., the 60-year minimum. *Id*. at 393-394. Accordingly, the Supreme Court remanded the matter for imposition of a 50 to 75 year sentence. *Id*. at 394. The sentencing issue at hand is not a *Tanner* violation; therefore, *Thomas* does not govern its resolution.

The resolution of the issue at hand is governed by *People v Miles*, 454 Mich 90 (1997). The defendant in *Miles* pleaded guilty to armed robbery and possession of a firearm during the commission of a felony (felony firearm). *Miles*, 454 Mich at 92. The presentence report stated that defendant was subject to a two-year consecutive sentence for felony firearm, and the trial court sentenced him accordingly. *Id*. 92-93. The Department of Corrections later discovered that the presentence report was incorrect, and that the defendant had a prior felony-firearm conviction, rendering him subject to an enhanced sentence of five years for his felony-firearm conviction. *Id*. at 93. The trial court, sua sponte and without a hearing or notifying the parties, resentenced the defendant accordingly, but left the six to 15-year sentence for armed robbery unchanged. *Id*. at 94. This Court affirmed. *Id*.

In reversing this Court on the issue, our Supreme Court held that the trial court erred by resentencing the defendant on the felony-firearm conviction without holding a hearing, but concluded that the error was harmless because the defendant admitted the accuracy of the prior felony-firearm conviction and—hearing or not—the "sentencing court was bound by the

enhancement provision of MCL 750.227b(1)." *Id*. at 101. Relevant to the instant case, the Court noted that a sentence is invalid if it is based on inaccurate information, *id*. at 96, and that, because the armed robbery sentence was based on the same inaccurate information as the felony-firearm sentence, it, too, was invalid under MCR 6.429(A), *id*. at 98. Accordingly, the Court held that the defendant had a right to be resentenced at a resentencing hearing with regard to his armed robbery conviction.[3] *Id*. Thus, the Supreme Court remanded the matter for the trial court to consider the new information as it chose, and stated that the court "may raise or lower the armed robbery sentence, or it may leave the sentence unchanged." *Id*. at 101.

According to the reasoning in *Miles*, the instant defendant's sentence was entirely invalid because the drug and firearm convictions were based on inaccurate information, i.e., that defendant had a prior felony-firearm conviction. *Id*. at 98. The trial court made clear that defendant's sentences of 1 to 20 years' imprisonment on the drug convictions and 1 to 10 years' imprisonment on the firearm convictions were based on the erroneous belief that defendant would be serving a mandatory five years, rather than two years, for the felony-firearm conviction. Because the trial court relied on inaccurate information to impose its original sentence, not only was it proper for the trial court to resentence defendant due to the inaccuracy, but defendant actually had a right to be resentenced under *Miles*. Therefore, the trial court did not commit plain err when it resentenced defendant.

Affirmed.

/s/ Michael J. Kelly
/s/ Jane M. Beckering
/s/ Douglas B. Shapiro

---

[3] The Court noted that sentences have been held invalid even when the error operated in a defendant's favor. *Miles*, 454 Mich at 98, and 98 n 12, citing *People v Corlin*, 95 Mich App 740; 291 NW2d 188 (1980) (where correcting the invalid sentence resulted in a longer prison sentence).