*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

UNPUBLISHED
December 28, 2023

v

BRANDON MICHAEL DUPUIS,

      Defendant-Appellant.

No. 361117
Bay Circuit Court
LC No. 19-010443-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

DEVON JOVELL KNIGHTS,

      Defendant-Appellant.

No. 361119
Bay Circuit Court
LC No. 19-010461-FC

---

Before: BORRELLO, P.J., and SWARTZLE and PATEL, JJ.

PER CURIAM.

In Docket No. 361117, defendant Brandon Michael Dupuis appeals as of right his convictions by a jury of first-degree murder under theories of premeditation and felony murder, MCL 750.316(1)(a) and (b); first-degree home invasion, MCL 750.110a(2); conspiracy to commit first-degree home invasion, MCL 750.110a(2) and MCL 750.157a; armed robbery, MCL 750.529; conspiracy to commit armed robbery, MCL 750.529 and MCL 750.157a; felon in possession of a firearm (felon-in-possession), MCL 750.224f; and four counts[1] of commission of a felony while

---

[1] The jury actually convicted Dupuis of five counts of felony-firearm, but Dupuis was sentenced for only four of them because two of the counts pertained to both theories underlying the first-degree murder conviction.

-1-

in possession of a firearm (felony-firearm), MCL 750.227b. The trial court sentenced him as a second-offense habitual offender, MCL 769.10, to imprisonment for life without the possibility of parole for murder; two terms of 200 to 360 months in prison for first-degree home invasion and the accompanying conspiracy; 468 to 720 months in prison for armed robbery; to 468 to 750 months in prison for conspiracy to commit armed robbery; to 47 to 90 months in prison for felon-in-possession; and four terms of 24 months in prison for the felony-firearm convictions. In Docket No. 361119, defendant Devon Jovell Knights appeals as of right his convictions by a separate jury of felony murder, first-degree home invasion, conspiracy to commit first-degree home invasion, and armed robbery. The trial court sentenced him, also as a second-offense habitual offender, to life in prison without the possibility of parole for murder; two terms of 200 to 360 months in prison for first-degree home invasion and the accompanying conspiracy; and 360 to 720 months in prison for armed robbery.

On appeal, Dupuis contends that the trial court erred by disallowing jury instructions on certain lesser offenses and by admitting certain video footage and telephone records into evidence. Knights contends that he received ineffective assistance of counsel in connection with plea discussions and that the trial court erred by admitting other-acts evidence. For the reasons set forth in this opinion, we affirm in both cases.

## I. BACKGROUND

The convictions arose from a home invasion by Dupuis, Knights, and a man named Brandon Miller. The prosecutor produced evidence, including surveillance-camera video footage, that Dupuis entered a home in Bay City through a window, let Knights and Miller inside, took a gun and money from a kitchen drawer, and shot and killed Tyler Gruber (Tyler), who lived in the home, when Tyler confronted Miller. Miller was also hit by a bullet. The residence housed a marijuana grow operation. Knights' jury was given instructions on aiding and abetting. Defendants were convicted and sentenced as previously stated, and they now appeal as of right. Their appeals were consolidated in this Court.[2]

## II. DOCKET NO. 361117

### A. LESSER INCLUDED OFFENSE INSTRUCTIONS

Dupuis argues that the court erred by failing to instruct the jury on the necessarily included lesser offenses of (1) voluntary manslaughter for the open-murder and felony-murder charges, (2) breaking and entering without permission for the charge of first-degree home invasion, and (3) larceny from a person in connection with the armed-robbery charge.[3]

---

[2] *People v Dupuis*, unpublished order of the Court of Appeals, entered May 13, 2022 (Docket No. 361117); *People v Knights*, unpublished order of the Court of Appeals, entered May 13, 2022 (Docket No. 361119).

[3] Dupuis asserts that the trial court also erred by declining to give other lesser offense instructions, but Dupuis does not develop any argument regarding these other offenses. Therefore, to the extent

-2-

Questions of law presented by claims of instructional error are reviewed de novo on appeal, but "a circuit court's decision as to whether a requested lesser-included-offense instruction is applicable under the facts of a particular case will only be reversed upon a finding of an abuse of discretion." *People v Jones*, 497 Mich 155, 161; 860 NW2d 112 (2014). "An abuse of discretion occurs when the circuit court chooses an outcome that falls outside the range of principled outcomes." *Id.*

An "inferior-offense instruction is appropriate only if the lesser offense is necessarily included in the greater offense, meaning, all the elements of the lesser offense are included in the greater offense, and a rational view of the evidence would support such an instruction." *People v Mendoza*, 468 Mich 527, 533; 664 NW2d 685 (2003). A defendant is not entitled to an instruction on a necessarily lesser included offense unless "a rational view of the evidence supports a conviction for the lesser offense." *Id.* at 545. As specifically relevant to this case, our Supreme Court has held that voluntary manslaughter is a necessarily included lesser offense of murder and that a defendant charged with murder is therefore entitled to an instruction on voluntary manslaughter if a rational view of the evidence supports it. *People v Yeager*, 511 Mich 478, 490; ___ NW2d ___ (2023), citing *Mendoza*, 468 Mich at 541. Thus, the question here becomes whether a rational view of the evidence at trial would have supported a conviction for voluntary manslaughter. See *Mendoza*, 468 Mich at 533.

"Both murder and voluntary manslaughter 'require a death, caused by defendant, with either an intent to kill, an intent to commit great bodily harm, or an intent to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result.' " *Yeager*, 511 Mich at 489, quoting *Mendoza*, 468 Mich at 540. Murder, however, requires "malice," which is the only distinguishing element between murder and manslaughter. *Mendoza*, 468 Mich at 533-535, 540. Voluntary manslaughter "differs from murder because it is provoked." *People v Reese*, 491 Mich 127, 143; 815 NW2d 85 (2012) (quotation marks and citation omitted). Although it "is not justifiable to take life under provocation," the provocation nonetheless "may be serious enough to deprive the intentional killing of its malicious character, so that it is neither murder on the one hand nor justifiable or excusable on the other." *Id.* (quotation marks and citation omitted).

Our Supreme Court has explained the elements of voluntary manslaughter as follows:

---

he attempted to raise these additional lesser offense instruction issues, he abandoned them. As stated in *People v Henry*, 315 Mich App 130, 148-149; 889 NW2d 1 (2016),

> [a]n appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority. The appellant himself must first adequately prime the pump; only then does the appellate well begin to flow. Failure to brief a question on appeal is tantamount to abandoning it. [Quotation marks and citations omitted.]

Thus, to show voluntary manslaughter, one must show that the defendant killed in the heat of passion, the passion was caused by adequate provocation, and there was not a lapse of time during which a reasonable person could control his passions. Significantly, provocation is not an element of voluntary manslaughter. Rather, provocation is the circumstance that negates the presence of malice. [*Mendoza*, 468 Mich at 535-536 (citations omitted).]

"The provocation necessary to mitigate a homicide from murder to manslaughter is that which causes the defendant to act out of passion rather than reason." *People v Pouncey*, 437 Mich 382, 389; 471 NW2d 346 (1991). In *Pouncey*, the Court explained:

In addition, the provocation must be adequate, namely, that which would cause the reasonable person to lose control. Not every hot-tempered individual who flies into a rage at the slightest insult can claim manslaughter. The law cannot countenance the loss of self-control; rather, it must encourage people to control their passions.

The determination of what is reasonable provocation is a question of fact for the factfinder. However, the judge does play a substantial role. The judge furnishes the standard of what constitutes adequate provocation, i.e., that provocation which would cause a reasonable person to act out of passion rather than reason. When, as a matter of law, no reasonable jury could find that the provocation was adequate, the judge may exclude evidence of the provocation. [*Id*. at 389-390 (citations omitted).]

Here, Dupuis argues that a rational view of the evidence provided support for a voluntary manslaughter instruction because the fatal gunshots were fired in response to observing the victim struggling with Miller in the house. Dupuis appears to argue that observing the struggle between the victim and Miller necessarily caused the homicide to have been committed under the heat of passion to defend Miller. The argument advanced by Dupuis on appeal ignores his trial testimony during which he denied being present in the home that night and denied that he was the person shown on the video firing the gun.[4]

Evidence that a homicide was committed in response to a prolonged physical and verbal assault may justify a voluntary manslaughter instruction. In *Yeager*, the Supreme Court reasoned:

[A] review of the facts of this case demonstrates that the voluntary manslaughter instruction would have been supported by the evidence presented. The testimony presented at trial reflected that defendant's shooting of Brooks was the culmination of a series of events during which Brooks physically assaulted defendant, took her car and used it to attempt to run her over, and repeatedly threatened to kill defendant and Borom, the neighbor who assisted her. Defendant testified that she feared for her life. At the . . . hearing [regarding ineffective assistance of counsel], when asked about the moments leading up to the shooting, she explained, "I just

---

[4] Other trial witnesses identified Dupuis in the video.

-4-

remembered bein' scared. I don't remember details, like, walkin' towards him, or anything like that. And when I seen the video, I didn't even see myself, or remember shootin' as many times as they say I did." Borom also testified that defendant was hysterical and crying when she returned to his vehicle after the shooting. *A jury could reasonably conclude that the combination of physical and verbal threats from Brooks throughout this unbroken chain of events stoked defendant's passions so that she acted out of heightened emotion rather than reason in shooting Brooks.* [*Yeager*, 511 Mich at 491-492 (emphasis added).]

Nonetheless, the record in this case does not contain evidence of the type of prolonged physical and verbal altercation that was present in *Yeager*. Instead, this case involves evidence of a brief, non-life-threatening altercation between the victim and Miller that was met with Dupuis's decision to fatally shoot the victim. Review of the record leads us to conclude that at trial, Dupuis did not introduce any evidence of his mental state from which a jury could conclude that he acted out of passion, or heightened emotion, rather than reason. *Pouncey*, 437 Mich at 389-390; *Yeager*, 511 Mich at 491-492.

Accordingly, on this record, as a matter of law, no reasonable jury could find there was adequate provocation to negate the element of malice and mitigate this murder to manslaughter. *Pouncey*, 437 Mich at 389-392 (holding that the trial court was "absolutely correct in ruling that as a matter of law there was insufficient evidence to establish an adequate provocation" where there was no evidence that the defendant was in a highly inflamed state of mind or that his ability to reason was clouded by passion and the alleged provocation only involved a "verbal fracas"). A brief, physical confrontation with the unarmed resident of a dwelling while stealing from the dwelling, without more, is not adequate provocation for purposes of voluntary manslaughter as a matter of law. This is especially true when, as occurred here, the defendant affirmatively asserted that he was not even present at the scene of the murder and did not even claim that he acted out of passion rather than reason. We thus conclude that the trial court did not abuse its discretion by declining to give an instruction on voluntary manslaughter.

Dupuis next contends that an instruction on breaking and entering was warranted as a lesser included offense of first-degree home invasion. First-degree home invasion is defined in MCL 750.110a(2), which states:

(2) A person who breaks and enters a dwelling with intent to commit a felony, larceny, or assault in the dwelling, a person who enters a dwelling without permission with intent to commit a felony, larceny, or assault in the dwelling, or a person who breaks and enters a dwelling or enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a felony, larceny, or assault is guilty of home invasion in the first degree if at any time while the person is entering, present in, or exiting the dwelling either of the following circumstances exists:

(a) The person is armed with a dangerous weapon.

(b) Another person is lawfully present in the dwelling.

-5-

Breaking and entering is defined in MCL 750.115(1), which provides:

> (1) Any person who breaks and enters or enters without breaking, any dwelling, house, tent, hotel, office, store, shop, warehouse, barn, granary, factory or other building, boat, ship, railroad car or structure used or kept for public or private use, or any private apartment therein, or any cottage, clubhouse, boat house, hunting or fishing lodge, garage or the out-buildings belonging thereto, any ice shanty with a value of $100.00 or more, or any other structure, whether occupied or unoccupied, without first obtaining permission to enter from the owner or occupant, agent, or person having immediate control thereof, is guilty of a misdemeanor.

As stated in *People v Silver*, 466 Mich 386, 392; 646 NW2d 150 (2002) (opinion by TAYLOR, J.),

> breaking and entering without permission is a necessarily included lesser offense of first-degree home invasion. Breaking and entering without permission requires (1) breaking and entering or (2) entering the building (3) without the owner's permission. It is impossible to commit the first-degree home invasion without first committing a breaking and entering without permission.

Here, a rational juror could not conclude that Dupuis committed breaking and entering but not first-degree home invasion. The evidence showed that he was armed with a gun, that another person was lawfully present in the dwelling, and that he committed a larceny (stealing the gun and money), an assault (shooting Tyler), and a felony (killing Tyler). MCL 750.110a(2). In other words, if the juror believed that it was Dupuis on the video footage, then first-degree home invasion, not breaking and entering, was the only rational choice.

Dupuis's argument on appeal that the evidence supported an instruction on the lesser offense of breaking and entering because the "video footage disputes that Defendant-Appellant intended to commit an assault" ignores the statutory language in MCL 750.110a(2) that a person commits first-degree home invasion so long as a felony, larceny, or assault is committed while in the dwelling. There is no requirement in the statute that the intent to commit one of those acts must exist before entering the dwelling. See *People v Baker*, 288 Mich App 378, 385; 792 NW2d 420 (2010) ("Accordingly, *intending* to commit a felony, larceny, or assault, and *actually* committing a felony, larceny, or assault simply constitute two different methods of establishing the same element of first-degree home invasion."). Accordingly, the trial court did not abuse its discretion by declining to give an instruction on breaking and entering.

Dupuis next contends that the trial court should have given an instruction on larceny from a person as a necessarily included lesser offense of armed robbery.

MCL 750.357 states, "Any person who shall commit the offense of larceny by stealing from the person of another shall be guilty of a felony, punishable by imprisonment in the state prison not more than 10 years." Under MCL 750.529(1), a person is guilty of armed robbery if the person "engages in conduct proscribed under section 530 and who in the course of engaging in that conduct . . . [either] (a) Possesses a dangerous weapon[,] (b) Possesses an article used or

-6-

fashioned in a manner that would cause a reasonable person to believe the article is a dangerous weapon[, or] (c) Represents orally or otherwise that he or she possesses a dangerous weapon." Section 530, in turn, provides as follows:

> (1) A person who, in the course of committing a larceny of any money or other property that may be the subject of larceny, uses force or violence against any person who is present, or who assaults or puts the person in fear, is guilty of a felony punishable by imprisonment for not more than 15 years.
>
> (2) As used in this section, "in the course of committing a larceny" includes acts that occur in an attempt to commit the larceny, or during commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property. [MCL 750.530.]

In *People v Smith-Anthony*, 494 Mich 669, 672; 837 NW2d 415 (2013), our Supreme Court held that "Michigan law requires a defendant to take property from the physical person or immediate presence of a victim to commit a larceny from the person." Relevant to the argument advanced on appeal in the present case, our Supreme Court in *Smith-Anthony* also held as follows:

> Under MCL 750.530(2), a defendant who uses force in fleeing a larceny is guilty of robbery. Therefore, robbery does not require that the taking have been made in the "immediate presence" of the victim. As a result, *larceny-from-the-person is no longer a necessarily included lesser offense of robbery*. [*Id.* at 687 n 53 (emphasis added).]

Here, we conclude that the premise of Dupuis's appellate argument is faulty. Dupuis argues that "[t]here was no evidence of intent to use the gun to gain money or anything else as the gun and the money in the drawer were taken at the same time." However, this argument fails to acknowledge that armed robbery can include using a gun to flee with property or money. See MCL 750.529(1) and MCL 750.530(2). Additionally, we have previously explained that larceny from a person is not a necessarily included lesser offense of armed robbery, *Mendoza*, 468 Mich at 53, and viewing the evidence presented in this case, we conclude that no rational juror could find that Dupuis engaged in a larceny from a person, but not an armed robbery. Accordingly, no error is apparent in connection with the trial court's failure to instruct on larceny from a person and defendant is not entitled to relief on this issue.

## B. EVIDENTIARY ISSUES

Dupuis additionally contends that the surveillance footage from Tyler's home-security system called "Arlo" and certain text messages[5] from Dupuis's telephone should not have been admitted into evidence because they were not authenticated and the text messages constituted inadmissible hearsay.

---

[5] Some of the messages were not technically "text messages" but were apparently made by way of Facebook; for ease of reference, this opinion uses the terms "texts" or "text messages."

As stated in *People v Duenaz*, 306 Mich App 85, 90; 854 NW2d 531 (2014):

> This Court reviews de novo both constitutional claims and preliminary questions of law regarding admissibility of evidence. We review the trial court's ultimate decision regarding admissibility of evidence for an abuse of discretion. An abuse of discretion occurs when trial court's decision is outside the range of principled outcomes. [Citations omitted.]

Dupuis preserved his challenges to the authentication of the video and text messages by objecting on this ground in the trial court. *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007) ("For an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court."). However, the hearsay arguments advanced on appeal are not preserved because Dupuis did not object to the admission of this evidence on these grounds in the trial court. "An objection based on one ground at trial is insufficient to preserve an appellate attack based on a different ground." *People v Stimage*, 202 Mich App 28, 30; 507 NW2d 778 (1993).

This Court reviews unpreserved issues for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999), mod on other grounds by *People v King*, ___ Mich ___; ___ NW2d ___ (2023) (Docket No. 162327). On plain-error review, reversal is warranted if a "clear or obvious" error occurred that "affected the outcome of the lower court proceedings." *Carines*, 460 Mich at 763. And even if this standard is satisfied,

> an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence. [*Id*. at 763-764 (citation, quotation marks, and brackets omitted).]

Tyler's home security system captured his murder on video. Dupuis contends that this video footage obtained from Arlo was not admissible because the prosecutor did not properly authenticate it through the testimony of an Arlo representative.

MRE 901[6] states in relevant part:

> **(a) General Provision.** The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

> **(b) Illustrations.** By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

---

[6] There will be some changes to this rule, and other rules of evidence mentioned in this opinion, going into effect on January 1, 2024.

(1) *Testimony of Witness With Knowledge*.  Testimony that a matter is what it is claimed to be.

* * *

(4) *Distinctive Characteristics and the Like*.  Appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances.

* * *

(6) *Telephone Conversations*.  Telephone conversations, by evidence that a call was made to the number assigned at the time by the telephone company to a particular person or business, if (A) in the case of a person, circumstances, including self-identification, show the person answering to be the one called, or (B) in the case of a business, the call was made to a place of business and the conversation related to business reasonably transacted over the telephone.

* * *

(9) *Process or System*.  Evidence describing a process or system used to produce a result and showing that the process or system produces an accurate result.

In *People v Berkey*, 437 Mich 40, 52; 467 NW2d 6 (1991), our Supreme Court stated:

It is axiomatic that proposed evidence need not tell the whole story of a case, nor need it be free of weakness or doubt.  It need only meet the minimum requirements for admissibility.  Beyond that, our system trusts the finder of fact to sift through the evidence and weigh it properly.

If a tape, or any other proposed exhibit that is subject to the MRE 901 requirement of authentication, is shown to be "what its proponent claims," then it has been authenticated sufficiently.  [Citations omitted.]

Here, Detective Bradley Lewis with the Bay City Department of Public Safety testified about the Arlo camera system in Tyler's residence.  When Lewis went to the residence as part of his investigation of the homicide, he observed the cameras installed in multiple locations of the residence.  According to Lewis, the cameras record video that is transmitted wirelessly to be stored "in the cloud."  There is no on-site video storage, and the video footage can be viewed from the owner's cellular telephone.

Lewis testified that he initially looked at video from the cameras by using Tyler's cellular telephone.  He had to go to the morgue and use Tyler's "right index fingerprint" to access the phone. The detective saw some videos from "the time around the homicide" and obtained a search warrant for the stored video footage from the residence. Detective Lewis stated that he sent a "preservation request" to Arlo while the search warrant was being prepared.  In response to the search warrant, he received "a thumb drive from the company, Arlo, in the mail."  The prosecutor asked, "And, when you looked at the footage that was contained on that, was it the same as what

you were—probably similar to, but with more detail, what you looked at when you were looking at [Tyler's] phone?" The detective replied:

> Correct. The videos that I looked at on [Tyler's] phone that day were the same videos that Arlo had sent me. However, Arlo sent me more footage from other days, and more from that same day. It was just more files.

The detective said that the telephone and the thumb drive showed Tyler's homicide but that the thumb drive contained more footage from before and after the homicide. In response to the objection of Dupuis's counsel, the trial court ruled that an adequate foundation had been laid for admission of the footage. It said, "But in terms of it being reliable, in terms of it not being altered, those are all questions for the jury, the finder of fact. I think that the foundation has been laid in this case."

The trial court did not abuse its discretion by admitting the video footage into evidence. The prosecutor, by way of the detective's testimony about using Tyler's fingerprint to access the phone, viewing the video on the phone, requesting further footage from Arlo, and the correspondence between the two sets of video footage provided "evidence sufficient to support a finding that the matter in question is what its proponent claims." MRE 901(a). The additional footage from Arlo and the footage that the detective viewed on Tyler's telephone had distinctive characteristics (i.e., it all showed a continuous time sequence), and the circumstances indicated that the footage was, in fact, the actual footage from the night in question. See MRE 901(b)(4).

When assessing whether evidence has been authenticated under MRE 901(a), "the trial court must determine whether the proponent of the evidence has made a prima facie showing that a reasonable juror might conclude that the proffered evidence is what the proponent claims it to be." *People v Smith*, 336 Mich App 79, 106; 969 NW2d 548 (2021) (quotation marks and citation omitted). "The judge should permit the evidence to go to the jury unless the showing as to authenticity is so weak that no reasonable juror could consider the evidence to be what its proponent claims it to be." *Id*. at 107 (quotation marks and citation omitted). Because a reasonable juror could conclude from the evidence that the video was what the prosecution claimed it was, the video was properly authenticated. It was up to the jury to weigh the evidence. *Berkey*, 437 Mich at 52; see also *Smith*, 336 Mich App at 107 (stating that once evidence has been properly authenticated under MRE 901(a), "the jury remains the ultimate fact-finder, and the jury decides whether the evidence is reliable and what weight to give the evidence, if any").

Dupuis also argues that certain text messages that were allegedly exchanged between Dupuis and other individuals should have been excluded. He argues that the text messages were not properly authenticated because nobody saw Dupuis write the text messages and it was therefore not shown that he had actually used the phone to write and send the messages.

MRE 901(a) states, "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Proposed evidence must only meet the minimum requirements for admissibility. *Berkey*, 437 Mich at 52; *Smith*, 336 Mich App at 106-107; *People v McDade*, 301 Mich App 343, 353; 836 NW2d 266 (2013). Regarding written messages, courts can evaluate the messages' distinctive characteristics, their contents, and the circumstances

surrounding the writings to determine whether the messages are sufficiently genuine. See, generally, *People v Ford*, 262 Mich App 443, 461-462; 687 NW2d 119 (2004).

Here, Bay City Police Officer Robert James Querback II testified about getting the text messages from a cellular telephone that was seized from Dupuis when he was arrested. Querback extracted the information from this phone pursuant to a search warrant, and he located messages exchanged through Facebook Messenger. In the Facebook Messenger application, the owner of the phone was listed as "Brandon Dupuis." These text messages included messages exchanged between the phone that was seized from Dupuis and a device associated with Knights, as well as messages exchanged between Dupuis's phone and a device associated with his girlfriend. A reasonable juror could conclude from this circumstantial evidence that the messages were sent and received by Dupuis; the prosecution's showing of authenticity was not "so weak that no reasonable juror could consider the evidence to be what its proponent claim[ed] it to be." *Smith*, 336 Mich App at 106-107.

Additionally, Dupuis admitted during his trial testimony to sending at least some of the messages, including messages to Knights and other messages seeking a ride during the early morning hours immediately following the murder. Dupuis claimed these messages had nothing to do with a home invasion or murder, however, from this record, we conclude that the trial court did not abuse its discretion by admitting the text message evidence. *Id*.

With respect to Dupuis's hearsay argument, he argues that the text messages were inadmissible hearsay because there was insufficient evidence that Dupuis wrote them and the texts therefore could not be admissions of a party opponent, see MRE 801(d)(2). However, as further explained above, Dupuis has failed to establish the premise of his argument. He thus has failed to establish plain error. *Carines*, 460 Mich at 763. To the extent Dupuis asserts that there was an issue of inadmissible hearsay related to the video footage, he has failed to provide any argument explaining his assertion. By failing to properly develop this argument, he has abandoned it. *People v Henry*, 315 Mich App 130, 148-149; 889 NW2d 1 (2016).

### III. DOCKET NO. 361119

### A. INEFFECTIVE ASSISTANCE OF COUNSEL

In Docket No. 361119, Knights first contends that he received ineffective assistance of counsel because his attorney told him there was no way he would be convicted of first-degree murder. He contends that if he had been given proper advice regarding liability under an aiding and abetting theory, he would have entered a plea for second-degree murder.

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law. A judge must first find the facts, and then must decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). A court's findings of fact are reviewed for clear error, and questions of constitutional law are reviewed de novo. *Id*.

To obtain relief on the basis of ineffective assistance of counsel, a defendant "must show that counsel's performance fell short of [an] objective standard of reasonableness and that, but for counsel's deficient performance, there is a reasonable probability that the outcome of [the

defendant's trial] would have been different." *People v Ackley*, 497 Mich 381, 389; 870 NW2d 858 (2015) (quotation marks and citation; second alteration in original). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quotation marks and citation omitted).

On December 27, 2022, a *Ginther*[7] hearing took place regarding Knights's claim of ineffective assistance of counsel. Knights claimed that his trial attorney, Alan Crawford, told him before trial that the prosecution was considering a plea offer of second-degree murder. Knights claimed that Crawford said "to not worry about it because . . . I wasn't gonna get found guilty of . . . murder 'cause I didn't murder anybody." Knights claimed that he and Crawford never discussed aider-and-abettor liability. He said that if he had understood this type of liability, he "would have tried to negotiate something."

Crawford testified that before trial, the prosecution was considering a plea agreement for second-degree murder and that he tried to get Knights to agree to such a plea deal. Crawford said that he "tried several times to convince him." Crawford said that he spoke with Knights and informed him that, in light of the video evidence, the possibility of a conviction of felony murder was high. He testified that Knights "just continued to say that it was [sic] no way he was gonna be found guilty because he didn't pull the trigger." Crawford indicated that he gave Knights the jury instructions for aiding and abetting and that Knights "was well aware of what aiding and abetting entailed." Furthermore, Crawford explained that Knights had "all the literature, multiple cases dealing with felony murder, and home invasion," as well as the jury instructions for all of the charged crimes. Crawford testified that he explained aider-and-abettor liability "very specifically" to Knights and that he informed Knights that if the jury believed Knights acted as an aider and abettor, Knights could be just as culpable as the shooter. Crawford denied ever telling Knights that he would not be convicted of first-degree murder, and Crawford denied Knights' allegation that they never discussed aider-and-abettor liability.

The trial court denied Knights' motion for a new trial. The court specifically found that Crawford was credible, stating that it "be1ieve[d] Mr. Crawford when he testified that he thoroughly explained aider and abettor liability to Mr. Knights." The trial court also found believable Crawford's testimony that "that he made no recommendation that a plea bargain not be pursued because Mr. Knights would be likely acquitted of murder one." Further, the court found that it was Knights' decision not to engage in plea negotiations, despite Crawford's advice.

The trial court did not clearly err by accepting Crawford's version of the facts. *LeBlanc*, 465 Mich at 579. And this Court "defer[s] to the trial court's assessment of witnesses' credibilities, to the extent such assessments are relevant, even where the applicable standard of review is otherwise de novo." *People v Ziegler (On Remand)*, 343 Mich App 406, 411; ___ NW2d ___ (2022) (Docket No. 355697). Knights has failed to establish the premises of his ineffective-assistance claim that he was told he could not be convicted of first-degree murder and was not advised on aider-and-abettor liability before trial and related to possible plea negotiations. Indeed, Knights intends for this Court to accept *his* version of the facts. Because Knights has not

---

[7] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

-12-

established either prong of an ineffective assistance of counsel claim, reversal on this basis is unwarranted.[8] *Ackley*, 497 Mich at 389.

## B.  OTHER-ACTS EVIDENCE

Knights next contends that the trial court improperly admitted into evidence text messages between Dupuis and Knights in which they discuss a possible home invasion at a location other than the one at issue in the present case.  He contends that the evidence was inadmissible under MRE 404(b) and was overly prejudicial.

As previously stated, we review de novo preliminary questions of law regarding the admissibility of evidence, and we review for an abuse of discretion the trial court's ultimate ruling on admissibility.  *Duenaz*, 306 Mich App at 90.  However, an "objection based on one ground at trial is insufficient to preserve an appellate attack based on a different ground," *Stimage*, 202 Mich App at 30, and this Court reviews unpreserved issues for plain error affecting substantial rights, *Carines*, 460 Mich at 763.

The evidence challenged by Knights on appeal consists of a text message conversation between Knights and Dupuis allegedly involving earlier plans to commit a different home invasion.  On cross-examination of Detective Lewis during Knights' trial, defense counsel elicited testimony that during the search of Dupuis's cell phone, text messages were discovered indicating that Dupuis was involved in illegally selling and using prescription medications.  On redirect, the prosecution sought to introduce text messages between Knights and Dupuis from approximately two weeks before the incident at issue in this case.  In those text messages, the prosecution argued that Knights was "seeking out Brandon Dupuis to be involved in what . . . could be argued as another home invasion."  The prosecution argued that defense counsel's questioning had "opened the door into getting into this other discussion . . . ."  Defense counsel objected, arguing as follows:

> I believe . . . my questions were limited to Brandon Dupuis's drug use and drug selling.  Particularly talked about weights, prices, talked about his alcohol use, while questioning the detective I did not necessarily go into any other crimes involving my client.  How that opens the door, I don't see that, your Honor.  The main focus here was Brandon Dupuis and selling drugs.  We're dealing with a case involving an alleged well, from the prosecution's theory, an alleged theft of drugs.  And I was indicating to the jury that Brandon Dupuis was already involved in the selling of narcotics.  I did not open the door to anything as pertaining to my client, any type of home invasions, there's no proof of any home invasions with my client

---

[8] Knights refers to a letter in which Crawford writes about disagreeing with the verdict.  This letter, attached to Knights's brief on appeal, adds nothing to Knights' appellate argument because counsel's expression of disagreement with the verdict is not evidence that trial counsel failed to advise Knights on aiding and abetting before trial and in connection with plea negotiations.  Moreover, it appears that Knights is attempting to impermissibly expand the record on appeal by attaching this letter to his brief.  *People v Powell*, 235 Mich App 557, 561 n 4; 599 NW2d 499 (1999).

being involved in any home invasions. I believe this evidence would be prejudicial as well as misleading.

In response to defense counsel's argument, the prosecutor argued that Knights' defense throughout the case had been that Dupuis was the instigator of the criminal activity and that Knights was "an unwitting participant in this." The prosecutor further argued that the text messages from two weeks earlier showed Knights as the initial and primary planner of that proposed home invasion, which rebutted the defense theory as to the home invasion and other accompanying criminal activity at issue in the trial. The trial court ruled as follows:

> I think the introduction of criminal activity on the part of Mr. Dupuis, even though [defense counsel's] question didn't go into anything other than drugs, does open the door to criminal activity on the part of Mr. Knights, and the fact that they were associated perhaps in criminal activity makes it relevant.

> I do agree there's some prejudice to it . . . but I think that the probative value outweighs the prejudice, and I will allow this into evidence.

The prosecutor then introduced this short text conversation between Knights and Dupuis, in which Knights stated that "she"[9] had been "doing research with t-h-r, old lady past couple days" and that "[s]he say these one people come every Tuesday, just cut grass to make it look like somebody there, but ain't nobody there."

On appeal, Knights argues that the trial court abused its discretion by admitting this other-acts evidence because "questions about Mr. Dupuis [did] not open the door to other acts evidence about [Knights]" and the evidence was relevant "only . . . to propensity," as well as "substantially more prejudicial than it [was] probative to any material fact." Knights contends that this evidence was admitted in violation of MRE 404(b), which provides in relevant part:

> (1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

In the trial court, there was no discussion of any specific rule of evidence on which admission of the evidence was predicated. Defense counsel did not specifically cite MRE 404(b). Defense counsel argued that he had not "opened the door" to admission of this evidence and that the evidence would be prejudicial and misleading.

Defense counsel's argument that the evidence was prejudicial and misleading appears to implicate MRE 403, which provides that "[a]lthough relevant, evidence may be excluded if its

---

[9] This third person was not identified by name.

probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." On appeal, however, Knights does not seriously raise any argument based on MRE 403. To the extent he asserts that the evidence was substantially more prejudicial than probative of any material fact, without providing any further development or discussion of relevant legal authority, he has abandoned any potential argument on this ground. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *Henry*, 315 Mich App at 148 (quotation marks and citation omitted).

The discussion in the trial court regarding whether defendant had "opened the door" to the introduction of this evidence may have been a reference to MRE 404(a)(1), even though the rule does not use the phrase "opened the door." See *People v Lukity*, 460 Mich 484, 497-499; 596 NW2d 607 (1999) (concluding, in a case involving charges that the defendant sexually assaulted his daughter, that the defendant's testimony about his own pertinent character trait of only engaging in "appropriate" activities with his children "opened the door" under MRE 404(a)(1) and MRE 405(a) to inquiry by the prosecution on cross-examination into specific instances of uncharged inappropriate conduct with his children, such as smoking marijuana with his son). MRE 404(a)(1) provides in relevant part that "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except . . . [e]vidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same . . . ."[10]

Here, in light of the manner in which the issue was framed in the trial court, especially given the complete lack of any discussion or ruling involving MRE 404(b), Knights' attempt to recharacterize the admission of the evidence as a violation of MRE 404(b) presents this Court with an issue for which it is difficult to provide any meaningful form of appellate review. In *Lukity*, 460 Mich at 499-500 our Supreme Court stated that:

> the prosecutor did not attempt to introduce evidence that defendant smoked marijuana with his son to prove that defendant had acted in conformity with his character for marijuana use. Rather, he merely cross-examined defendant regarding this issue, as permitted by MRE 405(a), in response to defendant's testimony, under MRE 404(a)(1), that he was a father who only engaged in appropriate activities with his children. This cross-examination under MRE 405(a) simply did not implicate MRE 404(b). Thus, the prosecutor was not obligated, under MRE 404(b), to demonstrate a purpose under which such evidence would be admissible or to provide notice.

The Court in *Lukity* concluded that it was thus improper to frame this issue "as whether this 'bad act' evidence was admissible under MRE 404(b)," and the Court held that reversal of the defendant's conviction was not warranted on this basis. *Id*. at 499-500.

---

[10] The other exceptions in MRE 404(a) are not at issue in this case.

Here, Knights did not object to the admission of this evidence on the basis of MRE 404(b) and thus failed to preserve this issue for appeal. *Stimage*, 202 Mich App at 30. Knights' attempt to reframe the issue by arguing that the trial court abused its discretion by admitting the evidence in violation of MRE 404(b) when the evidence was actually admitted for a purpose that did not seem to implicate MRE 404(b), see *id.*, does not establish that a plain error occurred—especially where he also fails to develop an argument directed at showing error in the actual reasoning for admission employed by the trial court. *Carines*, 460 Mich at 763. Moreover, even if Knights had successfully established the existence of a plain error, he has failed to provide any argument explaining how the admission of this minimally probative evidence prejudiced him in light of the other trial evidence. As Knights admits, he was identified at trial on the security camera footage that depicted the events at issue in this case. This footage showed three individuals entering Tyler's residence, as well as the shooting that killed Tyler. There was also DNA evidence admitted at trial tying Knights to the scene. It is a defendant's burden to establish prejudice by showing "that the error affected the outcome of the lower court proceedings," *id.*, and Knights has not carried this burden in this case on this claim of error.

Affirmed in both Docket No. 361117 and Docket No. 361119.

/s/ Stephen L. Borrello
/s/ Brock A. Swartzle
/s/ Sima G. Patel