# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

TRAVIS JAMES HENRY,

Defendant-Appellant.

FOR PUBLICATION
April 19, 2016
9:10 a.m.

No. 325144
Genesee Circuit Court
LC No. 13-033028-FC

Before: BECKERING, P.J., and OWENS and K. F. KELLY, JJ.

PER CURIAM.

Defendant appeals as of right from his jury trial conviction for armed robbery, MCL 750.529, for which he was sentenced as a fourth habitual offender, MCL 769.12, to 240 to 480 months' imprisonment. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS

On Sunday, March 17, 2013, defendant entered a Halo Burger in Genesee County where Jennifer Thomas was working as a shift manager and Elizabeth Murphy was working as a crew member in the kitchen. At approximately 11:10 a.m., defendant approached Thomas at the counter and demanded all the money that was in the till. Thomas asked defendant whether he was "f***ing serious" and defendant said, "Yes, I am, don't move, don't push a button, give me all the money in your till." Thomas observed that defendant had strawberry blond/reddish facial hair. He was wearing a dark blue zip-up hooded sweatshirt (hoodie) that had an insignia on the left side. Defendant's hands were in his pockets, but the pocket was, as she described it, "bulged forward." Thomas was able to demonstrate for the jury how defendant held his hands in his pockets. She was not sure whether defendant actually had a weapon, but did not take any chances and turned the money over to defendant. The register had contained three $10 dollar bills, six $5 dollar bills, and 35 $1 dollar bills.

Murphy also indicated that she observed defendant. He had strawberry blond facial hair and had his hands in the pocket of his hoodie "bulging forward." Like Thomas, Murphy testified that she assumed defendant had a weapon. She activated the alarm button after defendant left.

The prosecutor presented a witness who placed defendant in the area of the Halo Burger near the time of the robbery. Kuldip Singh testified that he worked at the Shell gas station in

-1-

Burton and that an individual matching defendant's description was in his store at approximately 10:45 a.m. that day. The Shell station maintained surveillance cameras and Singh cooperated in finding an image of the individual, which was later shown to Thomas and Murphy at the Halo Burger. Both Thomas and Murphy separately identified the man in the surveillance photo as the robber. They also both separately (and immediately) chose defendant's image from a photo array shown several days later.

An officer on patrol heard from dispatch regarding the robbery, which also included a description of the robber. The officer proceeded to a common drug location because, from his experience, robbers tended to use the proceeds of their crimes for drugs. The officer pulled up near a maroon Grand Prix and noted that the driver's appearance matched the description of the robber. He pulled defendant over and while defendant was looking for his license, insurance and registration, the officer observed "quite a bit of money on the front floorboard under the driver's feet . . .up towards the center console." There was also a blue hooded sweatshirt in the back seat. Defendant was arrested. Defendant told officers that he lived in Fenton and that he was coming from his girlfriend's house in Burton to his friend's house around the corner. Officers found $75 under the front driver's seat. There was one $10 dollar bill, six $5 dollar bills, and 35 $1 dollar bills. There was a screwdriver under the hooded sweatshirt in the middle of the backseat. An officer returned to Halo Burger where Thomas confirmed that the hoodie taken from the vehicle defendant was driving was the same hoodie the robber was wearing.

The jury was instructed as to armed robbery, unarmed robbery and larceny from a person. It convicted defendant of armed robbery. Defendant was sentenced as a fourth habitual offender to 240 to 480 months' imprisonment. He now appeals as of right.

## II. ANALYSIS

### A. SUFFICIENCY OF THE EVIDENCE

Defendant argues that there was insufficient evidence to support his conviction for armed robbery because there was no evidence that defendant possessed a weapon or verbally indicated that he had a weapon. Defendant argues that the armed robbery statute requires that a person have a reasonable belief that the defendant was armed with a dangerous weapon. We disagree with defendant's interpretation.

"We review de novo a challenge on appeal to the sufficiency of the evidence." *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). "Taking the evidence in the light most favorable to the prosecution, the question on appeal is whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *People v Hardiman*, 466 Mich 417, 421; 646 NW2d 158 (2002). "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *Id.* at 428.

"Statutory interpretation is a question of law that we review de novo." *People v Phillips*, 469 Mich 390, 394; 666 NW2d 657 (2003). The Court's goal "in interpreting a statute is to ascertain and give effect to the intent of the Legislature. The touchstone of legislative intent is the statute's language. If the statute's language is clear and unambiguous, we assume that the

Legislature intended its plain meaning and we enforce the statute as written." *People v Hardy*, 494 Mich 430, 439; 835 NW2d 340 (2013) (internal quotation marks omitted).

MCL 750.529 provides, in pertinent part:

A person who engages in conduct proscribed under section 530[1] and who in the course of engaging in that conduct, possesses a dangerous weapon or an article used or fashioned in a manner to lead any person present to reasonably believe the article is a dangerous weapon, or who represents orally or otherwise that he or she is in possession of a dangerous weapon, is guilty of a felony punishable by imprisonment for life or for any term of years.

Therefore;

in order to obtain a conviction for armed robbery, a prosecutor must prove that

(1) the defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon. [*People v Gibbs*, 299 Mich App 473, 490-491; 830 NW2d 821 (2013) quoting *People v Chambers,* 277 Mich App 1, 7; 742 NW2d 610 (2007).]

Defendant argues that MCL 750.529 requires that the victim have a reasonable belief that the defendant was armed with a dangerous weapon. In so doing, defendant ignores the statute's plain language. The clause "possesses a dangerous weapon or an article used or fashioned in a manner to lead any person present to reasonably believe the article is a dangerous weapon,"

---

[1] MCL 750.530 provides:

(1) A person who, in the course of committing a larceny of any money or other property that may be the subject of larceny, uses force or violence against any person who is present, or who assaults or puts the person in fear, is guilty of a felony punishable by imprisonment for not more than 15 years.

(2) As used in this section, "in the course of committing a larceny" includes acts that occur in an attempt to commit the larceny, or during commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property.

requires that the defendant either (1) actually possess a dangerous weapon, or (2) possess some article that would lead a person to reasonably believe the article is a dangerous weapon. But the following clause in the statute – "*or* who represents orally or otherwise that he or she is in possession of a dangerous weapon" – does not contain the same "reasonable relief" requirement. "The word 'or' is a disjunctive term" and "indicates a choice between two alternatives." *State v McQueen*, 293 Mich App 644, 671; 811 NW2d 513 (2011) (internal citation omitted). The latter clause provides that a defendant is guilty of armed robbery if he either (1) orally represents that he has a dangerous weapon, or (2) "otherwise" represents that he possesses a dangerous weapon. For these two alternatives, the victim's fear or belief is irrelevant. Thus, a defendant is guilty of armed robbery if he engages in conduct under MCL 750.530, and:

1. He actually possesses a dangerous weapon, *or*

2. He possesses some article that would lead a person to reasonably believe that the article is a dangerous weapon, *or*

3. He orally represents that he possesses a dangerous weapon, *or*

4. He otherwise represents that he possesses a dangerous weapon.

Defendant cites *People v Saenz*, 411 Mich 454, 455; 307 NW2d 675 (1981), *People v Jolly*, 442 Mich 458; 502 NW2d 177 (1993), and *People v Johnson*, 206 Mich App 122; 520 NW2d 672 (1994), but these cases all applied the old armed robbery statute, which provided:

> Any person who shall assault another, and shall feloniously rob, steal and take from his person, or in his presence, any money or other property, which may be the subject of larceny, such robber being armed with a dangerous weapon, or any article used or fashioned in a manner to lead the person so assaulted to reasonably believe it to be a dangerous weapon, shall be guilty of a felony.

The 2004 amendment changed the statute significantly. Thus, whereas the old statute required that the robber be either armed with a dangerous weapon or possess some article that would lead the person assaulted to reasonably believe it to be a dangerous weapon, the newer version provides the four alternatives previously discussed. The fourth scenario is at play in this case where neither Thomas nor Murphy saw defendant with a weapon and where defendant made no oral representation that he possessed a weapon. Defendant's analysis on this issue is flawed to the extent that he focuses on whether Thomas and Murphy had a reasonable belief that defendant was armed. Instead, the focus must be on whether defendant "otherwise" represented that he was in possession of a dangerous weapon.

There was sufficient evidence to support defendant's armed robbery conviction where defendant "otherwise" represented that he was armed with a dangerous weapon. Thomas testified that defendant's "hands were in his pocket kind of bulged forward." Thomas "wasn't sure what was in those pockets. . . .I didn't know if he had a weapon." She acknowledged that she did not tell the 911 operator that defendant had indicated a weapon because she never saw a weapon and defendant never actually said he had a weapon. Instead, Thomas told the operator that "he had his hands in his shirt and I wasn't taking any chances." She also told the officers who responded to the scene that she "was not taking any chances. The hand motion in the front

pockets was enough for me to not know." Thomas further acknowledged that while it would not be unusual for an individual to have his hands in the front pockets of his hoodie, defendant's hands "were in but bulged out further than normally would be." Thomas actually put on the hoodie and demonstrated for the jury what defendant's posture was.

Murphy also believed that defendant was armed. Like Thomas, Murphy was able to demonstrate defendant's posture for the jury. Murphy testified: "I'm not sure what it is, but I'm thinking a weapon" and that the robber's hands were clearly "bulging forward." She added that it was not unusual to have your hands in the pockets of the hoodie but "usually, you know, you'll pull your pockets facing down in your hands, not up to your, you know, to your stomach area. Usually you just put your hands in your pockets and they just lay flat . . .."

Therefore, although no weapon was displayed and defendant did not orally represent that he was armed, he "otherwise" represented that he was armed by placing his hands in his pockets and pushing them forward and there was sufficient evidence to support defendant's armed robbery conviction.

## B. EVIDENCE OF DEFENDANT'S 2006 ROBBERY

Defendant argues that his 2006 armed robbery of a 7-Eleven was irrelevant to the 2013 Halo Burger incident and evidence of the prior crime greatly prejudiced his case. We disagree.

This Court reviews for an abuse of discretion a trial court's decision to admit other acts evidence. *People v McGhee*, 268 Mich App 600, 636; 709 NW2d 595(2005). A trial court does not abuse its discretion when it chooses an outcome within the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

Generally, character evidence cannot be used to show that a defendant acted in conformity therewith because there is a danger that a defendant will be convicted solely upon his history of misconduct rather than on his conduct in a particular case. *People v Starr*, 457 Mich 490, 495; 577 NW2d 673 (1998). MRE 404(b) therefore provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

"MRE 404(b) does not prohibit all other-acts evidence that may give rise to an inference about the defendant's character, but only that which is relevant *solely* to the defendant's character or criminal propensity." *People v Jackson*, 498 Mich 246, 276; 869 NW2d 253 (internal quotation marks omitted). Generally, to be admissible under MRE 404(b), bad acts evidence (1) must be offered for a proper purpose, (2) must be relevant, and (3) must not have a probative value substantially outweighed by its potential for unfair prejudice. *People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004).

A proper purpose is one other than establishing the defendant's character to show his propensity to commit the offense. *People v Johnigan*, 265 Mich App 463, 465; 696 NW2d 725 (2005). "Evidence is relevant if it has any tendency to make the existence of a fact that is of consequence to the action more probable or less probable than it would be without the evidence." *People v Aldrich*, 246 Mich App 101, 114; 631 NW2d 67 (2001), citing MRE 401. Under this broad definition, evidence that is useful in shedding light on *any* material point is admissible. *Aldrich*, 246 Mich App at 114 (emphasis added). However, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. MRE 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

The prosecution sought to admit evidence of a 2006 incident at a 7-Eleven in which defendant allegedly indicated that he had a gun and that he would shoot the clerk if she did not hand over the money. The prosecutor argued that the 7-Eleven incident was relevant to defendant's intent "to give the impression that he was armed." It was also evidence of his system in robbing retail establishments. The prosecution also believed that the incident bore a "signature" quality such that it was relevant to identity. The trial court ruled: "The prosecutor can use the 404 information about the previous robbery attempt to the extent where they want to show that [defendant] has an intent to threaten with a weapon. The identity information will not be used."

At trial, Rachel Ann Springer then testified that, on August 8, 2006, defendant came into the 7-Eleven and told Springer that he wanted all of the money out of the register. Springer asked him if he was serious because she could not believe she was being robbed. She did not see a weapon, but defendant told her "I will shoot you."

The trial court did not abuse its discretion when it permitted the prosecution to present evidence of the 2006 7-Eleven robbery. The evidence was offered for a proper purpose and was highly relevant. It was not offered for the sole purpose of showing that defendant was a bad person. Instead, it was offered to give context to the crime itself. Defendant's behavior demonstrated an intent to place his victims in fear that he was armed with a dangerous weapon. While the evidence was undoubtedly prejudicial, it cannot be said that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice, especially in light of defendant's claim that he was not armed and that both Thomas and Murphy were unreasonable in their fear that defendant was armed.

## C. OTHER "IRRELEVANT" EVIDENCE

Defendant argues that the trial court erred when it permitted the prosecution to present evidence that defendant was at a Shell station just minutes before the Halo Burger robbery because the jury would understand that defendant had attempted to rob the Shell station. Defendant also argues that the trial court erred in allowing the prosecutor to question defendant's former girlfriend about whether defendant's mother had asked her to lie at trial. We hold that the trial court did not abuse its discretion when it permitted the prosecution to present evidence that defendant was at the Shell station, but we agree with defendant that the trial court erred in

permitting the prosecutor to question defendant's girlfriend about defendant's mother's alleged behavior. Nevertheless, we find the error harmless in light of the overwhelming evidence of defendant's guilt.

> The decision whether to admit evidence is within the trial court's discretion; this Court only reverses such decisions where there is an abuse of discretion. However, decisions regarding the admission of evidence frequently involve preliminary questions of law, e.g., whether a rule of evidence or statute precludes admissibility of the evidence. This Court reviews questions of law de novo. Accordingly, when such preliminary questions of law are at issue, it must be borne in mind that it is an abuse of discretion to admit evidence that is inadmissible as a matter of law. [*People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999) (internal citations omitted).]

In general, "[a]ll relevant evidence is admissible" while "[e]vidence which is not relevant is not admissible." MRE 402. As previously stated, "[e]vidence is relevant if it has any tendency to make the existence of a fact that is of consequence to the action more probable or less probable than it would be without the evidence." *Aldrich*, 246 Mich App at 114. Under this broad definition, evidence that is useful in shedding light on *any* material point is admissible. *Id.* at 114. In determining admissibility, "[t]he relationship of the elements of the charge, the theories of admissibility, and the defenses asserted governs what is relevant and material. In order to be material, the fact must be within the range of litigated matters in controversy." *People v Yost*, 278 Mich App 341, 403; 749 NW2d 753 (2008) (internal citations and quotation marks omitted). "Relevance involves two elements, materiality and probative value. Materiality refers to whether the fact was truly at issue." *People v Benton*, 294 Mich App 191, 199; 817 NW2d 599 (2011) (internal quotation marks and citations omitted).

However, even if a proponent of evidence can demonstrate its relevance, the evidence may still be excluded if the probative value of the evidence is outweighed by the danger of unfair prejudice. *Yost*, 278 Mich App at 407. "Unfair prejudice may exist where there is a danger that the evidence will be given undue or preemptive weight by the jury or where it would be inequitable to allow use of the evidence." *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008). "Assessing probative value against prejudicial effect requires a balancing of several factors, including . . . how directly the evidence tends to prove the fact for which it is offered, how essential the fact sought to be proved is to the case, the potential for confusing or misleading the jury, and whether the fact can be proved in another manner without as many harmful collateral effects." *Id.*

## 1. SHELL GAS STATION

Prior to trial, the prosecutor sought to introduce evidence that just minutes before the Halo Burger robbery, defendant attempted to rob a nearby Shell station. In that incident, defendant allegedly wore a hoodie, was holding what appeared to be a knife, and demanded that the proprietor hand over money. When the proprietor reached under the counter, defendant fled. A screwdriver was found nearby. The prosecutor offered the Shell station incident either as "res gestae" or MRE 404(b) evidence as evidence of plan and scheme and pattern of behavior, as well as proof of identity. The trial court ruled:

I don't like this motion. I see a difficulty in it. The only thing that I know is is that in the Shell station incident, somebody whose image does not show up well on the video, walks in with an object that could be a knife and tries to rob the station and then leaves. Eight and a half minutes later, some guy shows up at the Halo Burger with no weapon, acts like he has a weapon. And I don't know if they're not entirely different crimes, entirely different people. I don't necessarily see a common plan just because the clothing is similar. In one case, we know there's something that resembles a weapon that's waved around, and the other case there is not. I think talk about the earlier events is unfairly prejudicial and it will not be allowed.

At a later hearing, the prosecutor asked to introduce the Shell incident as proof that defendant was in the area of the Halo Burger, without making any reference to the attempted robbery. The trial court indicated that it did not "mind that" and that the prosecution "may say he was seen at the Shell station. They're not going to talk about what his activities were. They're not going to talk about screwdrivers found in a path."

At a later hearing, the prosecutor advised the trial court that criminal charges had been filed against defendant for the Shell incident and requested that the two cases be tried together. The trial court indicated that it would "not try them together. The Court will deny the motion for consolidation. . . .I think they need to be tried separately because they're different crimes, different victims, and different locations . . ."

At trial, Singh testified that an individual matching defendant's description was in his store at approximately 10:45 a.m. the day of the Halo Burger robbery. The Shell station maintained surveillance cameras and Singh cooperated in finding an image of the individual, which was later shown to Thomas and Murphy at the Halo Burger. There was a seven-mile distance between the Shell station and Halo Burger. The surveillance video from Shell was from approximately 10:45 a.m. and the robbery at Halo Burger occurred at 11:10 a.m.

Contrary to defendant's assertions, the evidence was highly relevant. It not only placed defendant in the vicinity of the Halo Burger at the time of the robbery, but the Shell incident resulted in surveillance images that allowed the Halo Burger victims (Thomas and Murphy) to identify the robber. It cannot be said that the probative value of the evidence outweighed the danger of unfair prejudice, given the limited use of the evidence.

## 2. KEEN'S TESTIMONY

At trial, Stephanie Keen testified that she and defendant had been in a romantic relationship for a few weeks before the robbery. She spent the night with him at his mother's house the night before the robbery. When she woke up the next morning at 10:00 a.m., defendant was gone. Also missing was Keen's sister's car that Keen had been using while her sister was in Hawaii. Defendant was arrested while driving Keen's sister's car. Keen identified the blue hoodie as one that defendant was wearing the night before the robbery. The following exchange took place during Keen's direct examination:

*Q.* Okay. Um, can you tell us whether or not at some point in time his mother called you and asked you to testify to something?

\*\*\*

*A.* Yes.

*Q.* She did, okay. And what did his mother ask you to testify to?

Defense counsel objected, arguing that it was hearsay evidence and was irrelevant because "[i]t's what his *mother* may or may not have done." Not addressing the relevancy issue, the trial court ruled: "It's not being offered for the truth of the matter asserted. We can go ahead with it." The exchange continued:

*Q.* What did his mother ask you to do?

*A.* To say that I allowed him to use the car.

*Q.* Say that what?

*A.* To say I allowed him to use the car.

*Q.* Was that true?

*A.* No.

*Q.* Approximately when was that?

*A.* It was sometime back in January.

*Q.* Of this year?

*A.* Yes.

The evidence was totally irrelevant. Defendant was not on trial for stealing the vehicle or unlawfully driving it away. The fact that he was arrested in Keen's sister's car was not in dispute at trial. Nor was the testimony relevant to Keen's credibility to show her "motivation not to lie," as the prosecution argues. It is true that, "[i]f a witness is offering relevant testimony, whether that witness is truthfully and accurately testifying is itself relevant because it affects the probability of the existence of a consequential fact," *People v Mills*, 450 Mich 61, 72; 537 NW2d 909, *modified* 450 Mich 1212 (1995), but it is unclear how the foregoing evidence touched on anything other than defendant's mother's potential wrong-doing.

Nevertheless, "[a] preserved error in the admission of evidence does not warrant reversal unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013) (internal quotation marks omitted). "The reviewing court must examine the nature of the error and assess its effect in light of the weight and strength of the untainted evidence." *Phillips*, 469 Mich at 397 (internal quotations marks omitted). Given the

overwhelming evidence that defendant committed the armed robbery, it cannot be said that this bit of evidence was outcome determinative. Both Thomas and Murphy positively identified defendant as the robber. He was driving a car that contained a hoodie matching the description Thomas had given. There were six $5 bills and 35 $1 bills, among other currency that matched the amount taken from Halo Burger. Because of the overwhelming evidence against defendant, any error in admitting the evidence was harmless.

## D.  DEFENDANT'S STANDARD 4 BRIEF

Defendant has filed Standard 4 brief pursuant to Administrative Order 2004–6, Standard 4. However, defendant's brief in bereft of citations to the record or any analysis. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). "The appellant himself must first adequately prime the pump; only then does the appellate well begin to flow. Failure to brief a question on appeal is tantamount to abandoning it." *Mitcham v City of Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959) (internal citations omitted).

Nevertheless, we have thoroughly reviewed each of the issues raised. Save one, there is no merit to any of them. The one issue that deserves at least a brief discussion is defendant's claim that the prosecutor impermissibly shifted the burden of proof to defendant. We find some merit to this claim as demonstrated by the following exchange between the prosecutor and the lead detective:

*Q*. Okay, now we've heard about [defense counsel's] position that the prosecution has the burden of proof and . . .it's totally accurate, right?

*A*. Yes.

*Q*. Okay. Beyond a doubt that's fair and reasonable, right?

*A*. Correct.

*Q*. Okay. But um, in your experience as a lawyer (sic), defense attorneys bring forth evidence that favors their client when they have it?

*A*. Absolutely.

*Q*. Now in May of 2013, who represented Mr. Henry?

*A*. Mr. Scott.

*Q*. And at any time between that date and April 1st, 2014, okay, 12 ½ months, was there any request for fingerprint analysis?

*A*. No.

MR. SCOTT:  Judge, may we approach again?

(At 12:41 p.m., Bench conference held)

MR. SCOTT: He's shifting the burden. I'm sorry, he's shifting the burden, Judge.

MR. WHITESMAN: I did not.

MR. SCOTT: I don't have to request anything.

MR. WHITESMAN: He doesn't.

MR. SCOTT: The one thing that I had to request is, is I got some exculpatory evidence.

MR. WHITESMAN: He doesn't.

THE COURT: I'm not going to let you go any further with this.

"A prosecutor may not imply . . . that the defendant must prove something or present a reasonable explanation for damaging evidence because such an argument tends to shift the burden of proof." *People v Fyda*, 288 Mich App 446, 463-464; 793 NW2d 712 (2010). The prosecution appeared to attempt to shift the burden of proof by intimating that defendant could have come forward with exculpatory evidence. However, while the attempt to shift the burden of proof was improper, it does not appear that defendant was denied a fair trial. The trial court immediately put a stop to that line of questioning. Additionally, following closing argument, the trial court instructed that defendant was presumed innocent and that defendant was not required to prove his innocence: "The prosecutor has the burden of proving to you beyond a reasonable doubt each and every one of those elements with evidence beyond a reasonable doubt. Of course the Defendant doesn't have to prove a thing because you still presume that he's innocent." Because jurors are presumed to follow their instructions, *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003), any error in the prosecution's statements was harmless.

Affirmed.

/s/ Jane M. Beckering
/s/ Donald S. Owens
/s/ Kirsten Frank Kelly

-11-