*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
April 11, 2024

Plaintiff-Appellee,

v

No. 362814
Macomb Circuit Court

NEIL KALINA,

LC No. 2021-002448-FC

Defendant-Appellant.

Before: CAVANAGH, P.J., and K. F. KELLY and RICK, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of two counts of second-degree criminal sexual conduct ("CSC-II"). Defendant was sentenced to concurrent terms of 7 to 15 years' imprisonment for each count. We affirm defendant's convictions, vacate defendant's sentences, and remand for further proceedings consistent with this opinion.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This matter stems from defendant's sexual abuse of the victim in 1984. The sexual assaults occurred when the victim was 14 years old and defendant was a priest at the church the victim attended with his family. As adduced at trial, defendant forged a personal relationship with the victim, and eventually began providing him with drugs and alcohol. One evening, while the victim and defendant were alone in defendant's bedroom, defendant inappropriately touched the victim and caused the victim to inappropriately touch him.

In 2018, a statewide investigation regarding the "large scale sexual abuse with the Catholic diocese" began. A "tip line" was opened and announced through a press conference. The victim's wife called the tip line and reported that the victim and several others were sexually abused by defendant. These statements were recorded on an intake form, which was forwarded to law enforcement. The intake form, admitted at trial, stated in relevant part:

> Caller reported that she wanted to know if [defendant] was still with any church or had any affiliation. She reported that [defendant] allegedly sexually abused her husband and other boys in 1984. She reports her husband has struggled

-1-

with alcohol and drugs as a result. She reports she is concerned that if [defendant] is still with the church that he may be hurting other children. She reports her husband does not know that she has made this call. She states he is not ready to really talk about what happened to him but states he is enrolled in counseling. She reports that her husband's best friend was also molested by [defendant] and subsequently committed suicide. Per her report, [defendant] would ply boys with alcohol prior to abusing them.

The victim and his wife testified at trial, and the intake form was admitted into evidence. Testimony was also presented that defendant gave alcohol and drugs to other minors and sexually assaulted another male when he was a minor. Defendant was convicted of two counts of CSC-II, MCL 750.520c(1)(b)(*iii*), but acquitted by the jury of one count of first-degree criminal sexual conduct ("CSC-I"), MCL 750.520b(1)(b)(*ii*). In July 2022, defendant was sentenced and, over defendant's objections, the trial court assessed 12 points to offense variable (OV) 12, which addresses "contemporaneous felonious criminal acts." MCL 777.42(1). Defendant was sentenced to 7 to 15 years' imprisonment for each CSC-II count, and this appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant first argues his due-process rights were violated because insufficient evidence was presented at trial to sustain the CSC-II convictions. We disagree.

## A. STANDARDS OF REVIEW

"This Court reviews de novo a question of constitutional law." *People v Warner*, 339 Mich App 125, 157; 981 NW2d 733 (2021) (quotation marks and citation omitted). This Court also "review[s] de novo a challenge on appeal to the sufficiency of the evidence." *People v Henry*, 315 Mich App 130, 135; 889 NW2d 1 (2016) (quotation marks and citation omitted). "To determine whether the prosecutor has presented sufficient evidence to sustain a conviction, we review the evidence in the light most favorable to the prosecutor and determine whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *People v Smith-Anthony*, 494 Mich 669, 676; 837 NW2d 415 (2013) (quotation marks and citation omitted). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015) (quotation marks and citation omitted).

## B. ANALYSIS

"[D]ue process requires the prosecution to prove every element beyond a reasonable doubt." *People v Oros*, 502 Mich 229, 240 n 3; 917 NW2d 559 (2018). There is sufficient evidence for a guilty verdict where "a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *People v Tennyson*, 487 Mich 730, 735; 790 NW2d 354 (2010) (quotation marks and citation omitted). "Circumstantial evidence and the reasonable inferences that arise from that evidence can constitute satisfactory proof of the elements of the crime." *People v Blevins*, 314 Mich App 339, 357; 886 NW2d 456 (2016).

Defendant was convicted of two counts of CSC-II under MCL 750.520c(1)(b)(*iii*).[1]  Under that statute, a person is guilty of CSC-II if the person (1) engages in sexual contact with victim; (2) the victim is at least 13 but under 16 years old; and (3) the person is in a position of authority over the victim and that authority is used to "coerce" the victim.  MCL 750.520c(1)(b)(*iii*).

The evidence established the victim was 14 years old at the time the crimes were committed.  The victim testified defendant touched the victim's penis and placed the victim's hand on defendant's erect penis.  Given the locations of the touching and defendant's arousal, evidence supports defendant touched the victim's "intimate parts" for a "sexual purpose" or in a "sexual manner," and caused the victim to touch defendant's "intimate parts" for a "sexual purpose" or in a "sexual manner."  See MCL 750.520a(q).

With respect to whether defendant used a position of authority "to coerce the victim to submit" to sexual contact, coercion

> may be actual, direct, or positive, as where physical force is used to compel act against one's will, or implied, legal or constructive, as where one party is constrained by subjugation to other to do what his free will would refuse.  [*People v Reid*, 233 Mich App 457, 469; 592 NW2d 767 (1999) (quotation marks and citations omitted).]

"Subjugate" is defined as "1. to bring under complete control or subjection; conquer; master. 2. to make submissive or subservient; enslave."  *Random House Webster's College Dictionary* (1995).  Notably, coercion need not consist of actual physical violence or even overt threats.  *People v Brown*, 197 Mich App 448, 450; 495 NW2d 812 (1992).  Instead, the existence of coercion is to be "determined in light of all the circumstances."  *Id*.  Coercion can exist where those with authority exploit the " 'special vulnerability' " of those under their control.  *Reid*, 233 Mich App at 472.

In *People v Regts*, 219 Mich App 294, 295-296; 555 NW2d 896 (1996), this Court affirmed the trial court's order reinstating the defendant's criminal sexual conduct charges that were predicated on theories of coercion, stating:

> In the case at bar, defendant, as the victim's psychotherapist, manipulated therapy sessions to establish a relationship that would permit his sexual advances to be accepted without protest.  That is, he subjugated the victim into submitting to his sexual advances against her free will.

Like in *Regts*, the evidence supported the prosecutor's theory that defendant used his status to establish a relationship with the victim that would permit defendant's sexual advances to be accepted without protest.  Defendant was a priest at the church the victim and his family attended. The victim was taught to respect priests and viewed defendant as having a position of authority over him.  Defendant had a relationship with the victim's mother, which likely signified to the

---

[1] The version of the statute in effect at the time the crimes were committed in 1984 contained identical language.  MCL 750.520c(1)(b)(*iii*), as amended by 1983 PA 158.

-3-

victim that defendant was worthy of trust and respect. See *Reid*, 233 Mich App at 470 (noting the defendant established a position of trust with the victim's parents, who permitted the victim to spend the night with the defendant when the sexual assaults occurred). The victim wanted to spend time with defendant, which led to the victim accepting defendant's invitation to watch late-night movies with him in his bedroom. This evidence adequately supports the coercion element because defendant manipulated his position of authority to have the victim alone where defendant could sexually assault him. See *id*. ("A reasonable jury could infer . . . defendant manipulated his 'counseling' role with the complainant—'a position of authority'—in order to have the complainant alone where defendant could sexually assault him."). Defendant also provided the victim with drugs and alcohol before the sexual assault. A reasonable jury could infer this was done with the intent to reduce the victim's inclination or ability to resist engaging in sexual activity with defendant. See *id*. (noting the defendant "spiked" the victim's beverage with alcohol, which a reasonable jury could infer "was done with the intent to reduce the [victim's] inclination or ability to resist engaging in sexual activity"). The victim's testimony strongly reflects he was disoriented when he awoke to defendant's hand on him.

Defendant's actions constituted implied, legal, or constructive coercion because, as a trusted adult and spiritual leader, defendant was in a position of authority. He used this position of authority to accomplish the assaults. Additionally, and importantly, the assaults occurred in defendant's bedroom. In *People v Premo*, 213 Mich App 406, 411; 540 NW2d 715 (1995), the Court held that the "defendant's actions constituted implied, legal, or constructive coercion because, as a teacher, defendant was in a position of authority over the student victims and the incidents occurred on school property." Defendant argues that *Premo*'s discussion of coercion and whether the defendant in that case used coercion to accomplish sexual contact with the victims is obiter dictum because it was an "alternative basis" for affirming the jury's verdict. Even if defendant is correct, *Premo* is persuasive and we agree with its analysis. See *Warner*, 339 Mich App at 138. The evidence supports defendant "subjugated the victim into submitting to his sexual advances against [his] free will." See *id*. Thus, when viewing all of the evidence in a light most favorable to the prosecution, the jury could have reasonably concluded beyond a reasonable doubt that defendant committed two counts of CSC-II by using his position of authority "to coerce the victim to submit" to sexual contact, and defendant's due-process rights were not violated. See *Oros*, 502 Mich at 240 n 3.

### III. ADMISSION OF INTAKE FORM

Next, defendant argues the trial court abused its discretion by admitting the intake form under the business-records exception to the prohibition on admission of hearsay.[2] Defendant also argues that the trial court plainly erred by admitting the portion of the intake form referencing the potential victim's suicide because the evidence was irrelevant and more prejudicial than probative. We disagree.

### A. STANDARDS OF REVIEW

---

[2] The Michigan Rules of Evidence were amended on September 20, 2023, effective January 1, 2024. We will rely on the relevant versions of the rules in effect at the time of trial.

We review de novo a trial court's interpretation and application of court rules. *People v Kimble*, 470 Mich 305, 308-309; 684 NW2d 669 (2004). A trial court's decision to admit evidence properly objected to is reviewed for an abuse of discretion. *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *Warner*, 339 Mich App at 133.

Defendant failed to preserve his argument below that the reference to suicide in the intake form was irrelevant or unfairly prejudicial under MRE 403 by failing to object on that basis. *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019). Therefore, the issue is unpreserved. See *id*. "This Court reviews unpreserved constitutional issues for plain error affecting a party's substantial rights." *People v Swenor*, 336 Mich App 550, 564; 971 NW2d 33 (2021). To establish error:

> 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice. Finally, once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence. [*People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999) (alteration in original; quotation marks and citations omitted).]

## B. ANALYSIS

Hearsay is a "statement," other than one made by the declarant while testifying "at the current trial or hearing," offered "to prove the truth of the matter asserted in the statement." MRE 801(c). Hearsay is inadmissible unless it falls under an established hearsay exception. MRE 802. The business-records exception excludes the following from operation of the hearsay rule:

> A memorandum, report, record, or data compilation, in any form, of acts, transactions, occurrences, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with a rule promulgated by the supreme court or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit. [MRE 803(6).]

The intake form admitted at trial stated, in relevant part:

Caller reported that she wanted to know if [defendant] was still with any church or had any affiliation. She reported that [defendant] allegedly sexually abused her husband and other boys in 1984. She reports her husband has struggled with alcohol and drugs as a result. She reports she is concerned that if [defendant] is still with the church that he may be hurting other children. She reports her husband does not know that she has made this call. She states he is not ready to really talk about what happened to him but states he is enrolled in counseling. She reports that her husband's best friend was also molested by [defendant] and subsequently committed suicide. Per her report, [defendant] would ply boys with alcohol prior to abusing them.

"The business records exception is based on the inherent trustworthiness of business records. But that trustworthiness is undermined and can no longer be presumed when the records are prepared in anticipation of litigation." *People v Jambor (On Remand)*, 273 Mich App 477, 482; 729 NW2d 569 (2007). The trustworthiness of the intake form was arguably fatally undermined because it was prepared and used to aid in the publicized investigation into sexual abuse by clergy. In this case, the intake form was transmitted to the prosecutor's office by the operators of the tip line. Indeed, the intake form reflected "[a]ll cases are turned over to the prosecutor's office[.]"

The intake form also referred to the suicide of another potential victim of defendant, a fact which defendant contends on appeal was irrelevant and unfairly prejudicial. See MRE 401, 403. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403. "Rule 403 does not prohibit prejudicial evidence; only evidence that is unfairly so. Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998). The prosecutor argues the reference to suicide was relevant to the credibility of the victim and the victim's wife, because the jury needed to hear evidence to explain why the assaults were eventually reported.

Assuming without deciding that the intake form was hearsay that did not have an exception as a business record, and that the reference to the suicide in the form was irrelevant and unfairly prejudicial, defendant cannot establish that had the intake form not been admitted, it was more probable than not that the result of the trial would have been different. See *People v Lukity*, 460 Mich 484, 497; 596 NW2d 607 (1999) (stating that despite the prosecutor's improper bolstering of the complainant's character, the defendant "has not demonstrated that it is more probable than not that the outcome would have been different without this error."). In this case, the victim testified defendant touched his penis and caused the victim to touch defendant's erect penis when the victim was 14 years old. Even though the testimony of a victim need not be corroborated in sexual assault cases, MCL 750.520h, the victim's testimony was bolstered by the testimony of several other witnesses. And while the intake form's reference to suicide was arguably unfairly prejudicial, the reference was fleeting and did not directly link the alleged victim's suicide to defendant's alleged sexual assaults. Instead, the intake form merely stated that the alleged victim was molested by defendant and that he "subsequently" committed suicide. Additionally, we are not persuaded that the jury was improperly influenced by admission of the intake form, as the jury

acquitted defendant of one count of CSC-I, which was the most serious crime of which defendant was charged.

## IV. ASSISTANCE OF COUNSEL

Defendant also argues he is entitled to a new trial because his defense counsel was ineffective for failing to object to the admission of the reference to suicide. We disagree.

## A. STANDARDS OF REVIEW

"The question whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). "Clear error exists when the reviewing court is left with the definite and firm conviction that a mistake has been made." *People v Davis*, 509 Mich 52, 68; 983 NW2d 325 (2022) (quotation marks and citation omitted). Because defendant did not move for a new trial or a *Ginther*[3] hearing, our "review is limited to errors apparent on the record." *People v Seals*, 285 Mich App 1, 19-20; 776 NW2d 314 (2009).

## B. ANALYSIS

The Sixth Amendment of the United States Constitution guarantees that criminal defendants receive effective assistance of counsel, US Const, Am VI. *Strickland v Washington*, 466 US 668, 687-688; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

> In order to establish the right to a new trial premised on ineffective assistance of counsel, a defendant must show: (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. [*People v Abcumby-Blair*, 335 Mich App 210, 228; 966 NW2d 437 (2020) (quotation marks and citations omitted).]

Under the objective-reasonableness prong, "[t]here is a presumption that counsel was effective, and a defendant must overcome the strong presumption that counsel's challenged actions were sound trial strategy." *Id.* at 236-237 (quotation marks and citations omitted; alteration in original). "This standard requires a reviewing court to affirmatively entertain the range of possible reasons . . . counsel may have had for proceeding as they did." *Id*. at 237 (quotation marks and citations omitted; alteration in original). "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *Id*. (quotation marks and citation omitted).

---

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

As discussed above, we assume without deciding that the admission of the intake form was improper. Thus, we will also assume without deciding that defense counsel's failure to object to its admission as it concerns the reference to the suicide fell below an objective standard of reasonableness under prevailing professional norms. Nonetheless, there is not a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. See *id*. at 228. For the same reasons articulated above, the evidence, when excluding the intake form, overwhelmingly supports defendant committed the crimes at issue in this case. Thus, counsel's failure to object to the brief reference to suicide in the intake form does not undermine our confidence in the outcome at trial. See *id*.

## V. SENTENCING

Lastly, defendant argues he is entitled to resentencing because the trial court violated his due-process rights by considering acquitted conduct when assessing points to OV 12 and fashioning his sentence. We agree.

## A. STANDARDS OF REVIEW

To preserve a sentencing issue, the argument must be raised "at sentencing, in a motion for resentencing, or in a motion to remand." *Kimble*, 470 Mich at 310; see also MCR 6.429(C). Because defendant failed to raise any constitutional arguments concerning his sentence at the time of sentencing, we review defendant's constitutional arguments for plain error. *Swenor*, 336 Mich App at 564.

## B. ANALYSIS

"A sentencing court may consider all record evidence before it when calculating the guidelines, including, but not limited to, the contents of a presentence investigation report, admissions made by a defendant during a plea proceeding, or testimony taken at a preliminary examination or trial." *People v Allen*, 331 Mich App 587, 594; 953 NW2d 460 (2020), vacated in part on other grounds 508 Mich 963 (2021) (quotation marks and citation omitted). However, "due process bars sentencing courts from finding by a preponderance of the evidence that a defendant engaged in conduct of which he was acquitted." *People v Beck*, 504 Mich 605, 629; 939 NW2d 213 (2019). "Once acquitted of a given crime, it violates due process to sentence the defendant as if he committed that very same crime." *Id*. at 609.

As an initial matter, the judicial guidelines apply to defendant's CSC-II convictions because they were committed before January 1, 1999. MCL 769.34(1); *People v Reynolds*, 240 Mich App 250, 253-254; 611 NW2d 316 (2000). The judicial guidelines, which were used in Michigan courts from 1983 to 1998, were crafted by the Michigan Supreme Court and were promulgated by administrative order. *People v Hegwood*, 465 Mich 432, 438; 636 NW2d 127 (2001). "[B]ecause the recommended ranges found in the judicial guidelines were not the product of legislative action, a sentencing judge was not necessarily obliged to impose a sentence within those ranges." *Id*. Thus, appellate courts will only offer relief "where (1) a factual predicate is wholly unsupported, (2) a factual predicate is materially false, and (3) the sentence is disproportionate." *People v Mitchell*, 454 Mich 145, 177; 560 NW2d 600 (1997).

In this case, defendant raises a constitutional challenge under the Michigan Supreme Court's decision in *Beck*, which held that "reliance on acquitted conduct at sentencing is barred by the Fourteenth Amendment." *Beck*, 504 Mich at 629. "When a jury has made no findings (as with uncharged conduct, for example), no constitutional impediment prevents a sentencing court from punishing the defendant as if he engaged in that conduct using a preponderance-of-the-evidence standard." *Id*. at 626. However, "when a jury has specifically determined that the prosecution has not proven beyond a reasonable doubt that a defendant engaged in certain conduct, the defendant continues to be presumed innocent." *Id*.

Defendant was charged with one count of CSC-I and two counts of CSC-II, and defendant was acquitted of the CSC-I count. The judicial sentencing guidelines state that, for the crime of criminal sexual conduct, OV 12 should be assessed at 25 points if there was "1 criminal sexual penetration[.]" Michigan Sentencing Guidelines (2d), p 45. Zero points are to be assessed if there was "[n]o sexual penetration[.]" *Id*. Over defendant's objections, the trial court, without explanation, found OV 12 was properly assessed at 25 points. It is clear that in assessing these points, the trial court relied on evidence defendant performed fellatio on the victim. No other evidence of sexual penetration between defendant and the victim was presented. See MCL 750.520a(r) (defining "sexual penetration" to mean "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required.")" Defendant was acquitted of CSC-I, which requires sexual penetration, MCL 750.520b(1)(b)(*iii*), and convicted of CSC-II, which only requires sexual contact, MCL 750.520c(1)(b)(*iii*). Because the trial court must have relied on conduct of which defendant was acquitted when fashioning sentences for the CSC-II convictions, he is entitled to resentencing. See *Beck*, 504 Mich at 629-630.

We affirm defendant's convictions and vacate defendant's sentences, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly
/s/ Michelle M. Rick