*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

KEDEREO DEVANTE TREASVANT,

Defendant-Appellant.

UNPUBLISHED
May 29, 2025
1:51 PM

No. 369043
Wayne Circuit Court
LC No. 22-001301-01-FC

Before: WALLACE, P.J., and RICK and GARRETT, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of two counts of discharging a firearm in or at a building causing injury, MCL 750.234b(3), and two counts of carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b.[1] Defendant was sentenced to 54 months to 15 years' imprisonment for each of his convictions of discharging a firearm in a building causing injury and two years' imprisonment for each of the felony-firearm convictions. We affirm.

## I. FACTUAL BACKGROUND

This case arises out of the nonfatal shooting of defendant's former girlfriend, Tiara Carson, and a friend of Carson's named Jailyn Kelley. The shooting took place at Kelley's residence in Detroit. On August 6, 2021, defendant and Carson got into an altercation. Defendant violently hit Carson in the face, choked her, and then broke up with her. The next day, Carson went to Kelley's house after she got off of work. Defendant repeatedly called Carson's cell phone, but Carson ignored it. Defendant ultimately showed up at Kelley's house and began knocking on the door.

---

[1] Defendant was also charged with two counts of assault with intent to commit murder, MCL 750.83, and its lesser included offenses, including two counts of assault with intent to do great bodily harm less than murder, MCL 750.84, and two counts of assault with a dangerous weapon, MCL 750.82. These charges included six associated felony-firearm counts. The jury acquitted defendant of these charges.

Kelley opened the door and briefly spoke with defendant. Kelley then locked the door and turned around. Defendant fired a gun through the door, striking Kelley and Carson. Carson and Kelley went to one of the bedrooms and called 911. When police arrived at the scene, Carson told them she thought defendant was the shooter. Carson, Kelley, and Kelley's cousin, who was also in the house at the time, denied that anyone returned fire when defendant shot through the door.

Defendant testified on his own behalf at trial. He denied Carson's allegations of domestic violence, stating that he did not strike or choke Carson the night before the shooting. He instead claimed that Carson had struck him in the past. Defendant further testified that he went to Kelley's house because he was attempting to find Carson. Defendant explained that he needed to find her because he left his medication at her apartment. He stated that when arrived at Kelley's residence, Kelley was acting hostile and pointed a gun at him. Defendant claimed that he heard a gunshot and then began shooting back in self-defense.

Prior to trial, defendant made a motion in limine to preclude references to Carson and Kelley as "victims" of the shooting, which the court denied. Defendant also attempted to cross-examine Carson regarding her testimony about the domestic violence incident, which the trial court limited based on a lack of relevance. After a six-day jury trial, defendant was convicted and sentenced as earlier described. This appeal followed.

## II. ANALYSIS

### A. COMPLAINANTS AS "VICTIMS"

Defendant argues that the trial court denied him a fair trial by denying his motion in limine and allowing the complaining witnesses to be referred to as victims. We disagree.

This Court reviews a trial court's decision on a motion in limine for an abuse of discretion. *People v Langlois*, 325 Mich App 236, 240; 924 NW2d 904 (2018). "A trial court does not abuse its discretion when it chooses an outcome within the range of reasonable and principled outcomes." *People v Henry*, 315 Mich App 130, 140; 889 NW2d 1 (2016). "A trial court abuses its discretion when it makes an error of law or operates within an incorrect legal framework." *Langlois*, 325 Mich App at 240 (citations omitted).

This Court has recently recognized that "no published Michigan decision or other authority . . . precludes the prosecution from referring to the complainant as 'the victim.' " *People v Wisniewski*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 361978); slip op at 18. However, to the extent that a defendant "argues that referring to each complainant as 'the victim' violate[s] his right to a fair trial, common sense suggests that such language is consistent with the prosecutorial role." *Id*. at ___; slip op at 19. As defendant correctly observes, the bulk of this Court's decisions on the matter are analyzed in the specific context of criminal sexual conduct (CSC) cases, where the relevant statutory provision defines the term "victim" as "the person *alleging* to have been subjected to criminal sexual conduct." MCL 750.520a(s) (emphasis added). In the CSC context, this Court has relied on that statutory basis to conclude that referring to complainants as victims does not deprive a defendant of a fair trial, since the Legislature has codified that language under MCL 750.520a(s). *Wisniewski*, ___ Mich App at ___; slip op at 18.

More generally, this Court has recognized that "even to a layperson on the jury, the clear basis for maintaining the criminal proceedings is the fact that the prosecution believes that the complainant actually is 'the victim.' " *Id*. at ___; slip op at 18. Thus, it is reasonable for a juror to assume a complainant is a victim during a criminal trial, and "the prosecution's use of that term could not have suggested anything to the jury of which it was not already aware." *Id*. at ___; slip op at 18. This general principle cuts against the notion that a defendant is denied the right to a fair trial merely because the prosecution used the term "victim" in reference to a complaining witness.

In contrast to MCL 750.520a(s), which defines the term "victim" in the CSC context, in the Crime Victim's Rights Act (CVRA), the term "victim" is defined as "[a]n individual who suffers direct or threatened physical, financial, or emotional harm as a result of the commission of a crime . . . ." MCL 780.752(1)(m)(*i*). Unlike cases involving CSC charges, the CVRA does not acknowledge that the term victim applies to an individual making allegations. Instead, it applies to an individual who suffered from the commission of a crime, which the statute also notes, happens "upon conviction." MCL 780.752(1)(b). We note that such references to complainants as victims prior to a finding of guilt potentially implicates a defendant's presumption of innocence.

The trial court noted the potential impact on defendant's presumption of innocence when it denied defendant's motion, and stated it would instruct the jury accordingly, which it subsequently did. In addition to this instruction, the trial court also instructed the jury that the trial attorneys' statements, arguments, and questions to witnesses were not evidence to be considered. Thus, any potential error was cured by the trial court's jury instructions. *Wisniewski*, ___ Mich App at ___; slip op at 19 ("the jury is presumed to follow its instructions, and this Court presumes that the trial court's instructions cure most errors.").

We also note that many references to the term "victim" occurred during jury selection, when the trial court asked prospective jurors whether they had previously been victims of domestic assault or a shooting, and then solicited the responses and explanations of the prospective jurors. Though the term arose with some frequency during witness testimony,[2] we are unconvinced that these references to Carson and Kelley as victims over the course of a six-day jury trial, which produced over 1,000 transcript pages, amounts to an abuse of discretion on the part of the trial court.

Finally, although the jury found defendant guilty of discharging a firearm in or at a building causing injury and the associated felony-firearm counts, it determined he was not guilty of assault with intent to commit murder or its lesser included offenses, along with an array of related felony-firearm charges. Given that he was found not guilty of these charges, defendant's argument that the repeated references to Carson and Kelley as victims undermined his presumption of innocence is unavailing. In the absence of any published Michigan authority that "precludes the prosecution from referring to the complainant as 'the victim,' " the trial court did not abuse its discretion by

---

[2] Upon review of the record, we counted approximately 40 references to the term "victim" throughout the trial testimony.

denying defendant's motion in limine subject to a jury instruction regarding his presumption of innocence. *Wisniewski*, ___ Mich App at ___; slip op at 18.[3]

## B. OTHER-ACTS EVIDENCE

Defendant also argues that the trial court erred and denied him a fair trial by foreclosing cross-examination regarding other-acts evidence. We disagree.

We review a trial court's decision to admit other-acts evidence for an abuse of discretion. *Henry*, 315 Mich App at 140. This Court also "reviews a trial court's ultimate decision regarding a limitation on cross-examination for an abuse of discretion." *People v Daniels*, 311 Mich App 257, 265; 874 NW2d 732 (2015). "A trial court does not abuse its discretion when it chooses an outcome within the range of reasonable and principled outcomes." *Henry*, 315 Mich App at 140. We review preliminary determinations regarding the admissibility of evidence de novo, as "it is necessarily an abuse of discretion to admit legally inadmissible evidence." *People v Lowrey*, 342 Mich App 99, 108; 993 NW2d 62 (2022).

MCL 768.27b(1) provides, in relevant part:

> [I]n a criminal action in which the defendant is accused of an offense involving domestic violence or sexual assault, evidence of the defendant's commission of other acts of domestic violence or sexual assault is admissible for any purpose for which it is relevant, if it is not otherwise excluded under Michigan rule of evidence 403.[4]

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Irrelevant evidence is inadmissible, MRE 402, and even relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence," MRE 403.

---

[3] In *People v Aikens*, ___ Mich App ___; ___ NW3d ___ (2025) (Docket No. 368187); slip op at 3, this Court observed that it is bound to follow *Wisniewski* on the subject of allowing the complainant to be referred to as the "victim." In a separate concurrence, Judge SWARTZLE opined that "[t]he practice of referring to the complainant as the 'victim' when the actus reus is before the jury is illogical, unnecessary, and prejudicial—any one of which would counsel against the practice, but all three of which compel its bar." *Aikens*, ___ Mich App at ___; slip op at 2-3 (SWARTZLE, J., concurring). He agreed with the majority that this Court is bound by *Wisniewski*, but urged the Supreme Court to review the matter in an appropriate case. *Id.* at ___; slip op at 3 (SWARTZLE, J., concurring). We echo that sentiment, and encourage the Court to take up this jurisprudentially significant issue.

[4] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See 512 Mich lxiii (2023). This opinion relies on the version of the Michigan Rules of Evidence in effect at the time of trial.

"It is well established that the trial court has a duty to control trial proceedings in the courtroom and has wide discretion and power in fulfilling that duty." *People v Willis*, 322 Mich App 579, 590; 914 NW2d 384 (2018). Accordingly, "a court has latitude to impose reasonable limits on cross-examination." *Id*. In presenting evidence, "[t]he defendant must still comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence. Accordingly, the right to present a defense extends only to relevant and admissible evidence." *People v Solloway*, 316 Mich App 174, 198; 891 NW2d 255 (2016) (quotation marks and citations omitted).

Here, defendant does not directly challenge the trial court's initial determination that Carson's testimony regarding other acts of domestic violence was admissible. Rather, he argues the trial court erred by limiting his cross-examination of Carson. At trial, the court questioned the relevancy of defendant's cross-examination, specifically the question of whether Carson hit defendant during the August 6, 2021 domestic violence incident. Though defendant recognized the primary issue in his case was self-defense for the August 7, 2021 shooting, he argued that he had to cross-examine Carson because the prosecution used her other-acts testimony to "paint him like a bad guy."

Defendant's offer of proof regarding the admissibility of Carson's testimony seems to take aim at her credibility. "Clearly, evidence is relevant when it affects the credibility of the victim and when it affects the credibility of witnesses who enhance the victim's credibility." *People v King*, 297 Mich App 465, 476-77; 824 NW2d 258 (2012). Further, "[a]s the finder of fact, the jury is generally entitled to weigh all evidence that might bear on the truth or accuracy of a witness's testimony." *Id*. at 477. However, despite acknowledging that the issue in the case was self-defense, defendant failed to explain the "logical link" between his self-defense claim for the August 7, 2021 shooting and the proffered testimony that Carson hit him the night before. See *id*. (finding a defendant's proposed evidence was inadmissible where he failed to establish a logical link between the purported evidence and fact to be proved).

Other than generally eliciting evidence of Carson's credibility, defendant offers no explanation under MRE 401 regarding why her actions during the domestic dispute the night prior to the charged conduct tended to make his self-defense claim more or less probable. Nor is the fact of consequence in determining the action, because whether Carson hit defendant the day prior does not bear on whether he acted in self-defense to prevent imminent harm to himself the following day. See MCL 780.972(1)(a) (providing for the use of deadly force where an individual honestly and reasonably believes it is necessary to prevent imminent death or great bodily harm).

Even assuming that defendant's sought-after testimony was relevant, the trial court properly excluded it under MRE 403. Here, the court had reason to preclude the evidence in an effort to avoid confusing the issues, since defendant's claim involved firing a gun in self-defense, which occurred the day after the domestic incident. The evidence was also needlessly cumulative, since defendant testified on his own behalf about the events of the domestic incident and asserted that Carson hit him in the past. Finally, the trial court was concerned that presentation of the evidence was a waste of time, and expressed its reservations about "litigat[ing] the prior acts, too[.]" Thus, the trial court properly excluded the evidence under MRE 403.

Moreover, even if we were to find that the trial court erred by foreclosing cross-examination of Carson's testimony, any error is presumed harmless. Under MCL 769.26,

> No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall *affirmatively appear* that the error complained of has resulted in a miscarriage of justice. [Emphasis added.]

Our Supreme Court has explained that

> [T]he 'affirmatively appear[s]' language in the statute 'creates a presumption that preserved, nonconstitutional error is harmless, which presumption may be rebutted by a showing that the error resulted in a miscarriage of justice,' and (2) a miscarriage of justice requires a defendant to establish that 'it was more probable than not that a preserved, nonconstitutional error' was outcome-determinative. [*People v Nelson*, ___ Mich ___; ___ NW3d ___ (2025) (Docket No. 166297); slip op at 8, quoting *People v Lukity*, 460 Mich 484, 493-495; 596 NW2d 607 (1999) (footnote omitted).]

Defendant cannot establish that the alleged error in this matter was outcome-determinative. Defendant was permitted to testify on his own behalf regarding Carson's allegations. Thus, he otherwise supplied the evidence he sought to elicit on cross-examination. Further, as earlier discussed, there is no logical link between defendant's allegation that Carson struck him the night before the shooting and his argument that he fired at Carson and Kelley in self-defense the following day. The trial court's decision to limit defendant's cross-examination of Carson thus did not deprive him of a fair trial or the meaningful opportunity to present his theory of self-defense. Defendant nonetheless maintains that the limitation of his cross-examination potentially inflamed the jury or caused unfair prejudice, but his argument is undermined by the fact that the jury ultimately seemed to credit his testimony by finding him not guilty of assault with intent to commit murder and its lesser included offenses.

Additionally, the prosecution presented ample evidence in support of defendant's convictions, and in support of the conclusion that defendant did not fire through a closed door in self-defense. Accordingly, even if the court allowed his cross-examination of Carson, the record otherwise supports that defendant would have been convicted of discharge of a firearm in or at a dwelling or occupied structure causing injury and felony-firearm. Given these considerations, that the trial court's limitation of defendant's cross-examination of Carson was not outcome-determinative. Any purported error in the trial court's evidentiary ruling was harmless, and reversal is not required.

Affirmed.

/s/ Randy J. Wallace
/s/ Michelle M. Rick
/s/ Kristina Robinson Garrett

-6-